## HACH *et al. Appellants, v.* HILL *et al.*

### IN BANC.

1. **Warranty Deed:** MORTGAGE. A warranty deed executed to secure advances of money, though absolute on its face, may be construed as a mortgage.

2. ——: COLLATERAL CONTRACT. Where the consideration for the deed was a written contract made by the husband of the grantor with a grantee and containing mutual stipulations, they will be read together in giving effect to the deed.

3. **Mortgage by Wife:** ADVANCES TO HUSBAND. A wife is competent to mortgage her land to secure advances by the mortgagee to her husband.

4. ——: ADMISSIONS. Admissions made by her that she executed a deed for such purpose are binding on her.

5. **Partnership:** PER CENTUM ON SALES. A contract for a per centum on sales in a business with no liability for profits or losses does not make one a partner therein.

Hach v. Hill.

6. **Contract, Construction of:** ACCOUNTING. A wife, the husband joining therein, conveyed a lot on which a stave factory had recently burned down. The husband and the grantees in the deed also executed a written contract by which the latter agreed to complete said factory at and within reasonable cost and time, to equip the same for a stave and head factory, to keep an account of all money expended, and on the expiration of the contract to reconvey the property, provided that the husband should pay to the grantees all indebtedness due them for the completion of the factory, or on any other account whatever. The contract further provides for the payment to the husband of nine per cent. net on all staves, heading or products of any kind made at said factory, and also that, if the grantee should find it unprofitable to run the factory and should stop it, the husband should make no claim for damages. *Held,* that on an accounting the property could not be charged with losses incurred by the grantees in operating the factory.

*Appeal from Washington Circuit Court.*—HON. J. L. THOMAS, Judge.

REVERSED AND REMANDED.

THE plaintiffs, who are husband and wife, sought by this proceeding to have a certain warranty deed, executed by them in September, 1879, whereby lot 75 in Poplar Bluff, Missouri, the property of the wife, was conveyed to Hill, Nall & Co., declared a mortgage. What the recital or contents of this deed were does not appear, as the same was not offered in evidence.

A contract was filed with the petition of plaintiffs, which was thought to convert the warranty deed into a mortgage, and is as follows:

"This agreement made the second day of September, 1879, by and between Nicholas Hach, of St. Louis, Missouri, of the first part, and Hill, Nall & Co., of Fredericktown, Missouri, of the second part, witnesses that the said party of the first part contracts and agrees to and with the party of the second part to convey to said party of the second part town lot number 75, in the town of Poplar Bluff, Butler county, Missouri; also all the boilers, engines, saws, shafting, machinery and

fixtures connected with and belonging to or appertaining to the stave factory now on said lot, to transfer and deliver to said party of the second part the steamboat Clara I., number 2, now on Black River, which boat is to be used exclusively in connection with the said factory; to give said party of the second part his best services and experience in running said factory under the direction and control of said party of the second part; that the said party of the second part contracts and agrees with said party of the first part to complete said factory at and within reasonable cost and time, to equip the same for a stave and head factory, to keep an account of all money expended, and on the expiration of this contract to reconvey to said party of the first part said factory and town lot and all machinery in said factory together with said steamboat, provided said party of the first part pays to said party of the second part all indebtedness due them for the completion of said factory or on any other account whatever, to pay said party of the first part nine per cent. net on all staves, heading or products of any kind made at said factory, and to give him a monthly statement of all sales of such products and to pay him monthly his portion of such sales.

"If said party of the second part determines it is unprofitable to run said factory and stops the same, or if said boat is lost by sinking, explosion or fire, said party of the first part to have or make no claim for damages. This contract to continue in force two years from date. Taxes on said realty and insurance on said factory and machinery to the extent of $3,000 in favor of the party of the second part to be paid by the party of the first part, and, in the event of loss by fire, the insurance money to be used in rebuilding or refurnishing said factory, or, by mutual consent, to be used in adjusting the accounts of the parties hereto; certain shafting, jointures, dry-house material now owned by

Hach v. Hill.

party of the first part, and real in said factory to be placed therein soon as conveniently can be done.

" Witness our hands and seals at St. Louis, Missouri, this second day of September, 1879.

" Witness, H. WALDSTEIN.

" [ Seal.]                        NICHOLAS NACH,
                          " HILL, NALL & Co.

" Per W. C. DINES."

This contract as will have been seen was made by the *husband alone* in his own name, and was unacknowledged and unrecorded.

It would seem that it was not made at the same time, but that it was made subsequently to the time the warranty deed was executed. Plaintiffs, in their petition, allege that the contract had its origin in certain adverse circumstances which had happened him, to-wit: His stave factory situated on the lot named, on which he had done business for years, unfortunately was partially burned down, and, not having sufficient funds of his own, he appealed to the defendants, Hill, Nall & Co., for assistance ; that said firm agreed to assist him, and in consequence the contract in question was made ; that Hach, the husband, fully complied with the terms of his agreement and paid the firm with which he contracted all that was owing them for money expended in the purchase of machinery and the repair of the factory ; that they failed to comply with the contract on their part in giving a statement of sales of the products of the factory, and that on a settlement a large sum would be found due the husband. The prayer is for a decree declaring the warranty deed a mortgage, and that defendants be required to convey the property to the wife, Clara E. Hach, and for other and further relief.

The answer of the firm, Hill, Nall & Co., was a general traverse of the allegations of the petition ; an allegation that the husband, Hach, in consequence of the expenditures made by them under the contract, had

become indebted to them in the sum of $10,000; that Hatch failed to perform the conditions of the contract, but had abandoned the same; that they fully complied with the conditions of the contract on their part, and asking that if the court should construe the warranty deed as a mortgage, that then a foreclosure of the same be granted in order to pay said indebtedness of the husband.

The answer of defendant Craig was to the effect that defendants had made a conveyance to him in September, 1883, for the benefit of creditors, who, in consideration of such deed being made, extended the time for the collection of their debts for two years; that, in 1884, defendant was also appointed receiver of said firm; that neither the defendant, nor the beneficiaries under the deed to him, had any notice of any infirmity in the title of Hill, Nall & Co.

At the close of the testimony the court entered the following decree: "Now at this day come the respective parties to this cause, and, the court proceeding to render its finding, judgment and decree upon the pleadings and evidence heretofore submitted to the court the court doth find from the pleadings and evidence, that the deed mentioned in the pleadings executed by plaintiffs to defendants, Hill, Nall & Co., dated September 1, 1879, was intended by the parties thereto as a mortgage, to secure the repayment of the latter of all sums of money that they might advance to said Hach, to rebuild and equip the stave and heading factory mentioned in the pleadings, and for advances made to ship and sell the staves and headings made by the factory, and that plaintiff has a right to redeem the property described in said petition, as follows, to-wit: Lot number 75, of the town of Poplar Bluff, except a small portion thereof, which had been conveyed to the St. Louis, Irom Mountain & Southern Railway Company, by paying Hill, Nall & Co. whatever sum plaintiff may owe them on the account aforesaid. And the court further finds

from the pleadings and evidence that Hill, Nall & Co. advanced to said Hach, under said agreement, sums of money for rebuilding and equipping the stave and heading factory, and on account of the business connected with the manufacture and sale of staves and headings made by said factory, amounting to thirty-two thousand, six hundred and thirty-six dollars and five cents ($32,636.05); and that they realized from the sale of staves and headings twenty-two thousand, eight hundred and thirty-six dollars and seventy-five cents ($22,836.75), and raised the further sum of forty-six hundred and seventy-three dollars and forty-eight cents ($4,673.48) from said Hach in cash from various sources, making twenty-seven thousand, four hundred and ten dollars and twenty-three cents ($27,410.23) of credits said Hach is entitled to, leaving a balance of forty-seven hundred and twenty-five dollars and seventy-two cents ($4,725.72); and that this balance was due them in September, 1881. The court further finds that Hill, Nall & Co. are entitled to interest on this balance from September 2, 1881, to this date, at the rate of six per cent. per annum, which amounts to fifteen hundred and eighty-five dollars and forty-six cents ($1,585.46), which, added to the $4,725.72, makes $6,311.18 now due defendants. It is, therefore, considered, adjudged and decreed by the court that the equity of redemption in the premises and property heretofore described be foreclosed, and that defendants recover of plaintiffs the said sum of sixty-three hundred and eleven dollars and eighteen-hundredths dollars ($6,311.18), the debt aforesaid found to be due, together with their costs to be levied on the real estate and property in said deed, described as follows, viz., lot 75, of the town of Poplar Bluff, Missouri, except a small portion thereof on the east side thereof, which has been conveyed to the St. Louis, Iron Mountain & Southern Railway Company, and that a special *fieri facias* forthwith issue from this court, directed to the

Hach v. Hill.

sheriff of Butler county, Missouri, to enforce this decree, and, upon a sale thereunder, the said sheriff shall pay, *first*, the expense of such sale and costs of this suit, and, *second*, the aforesaid sum found to be due defendants, with six-per-cent. interest thereon per annum, from this date to the day of sale, and the remainder he shall pay to plaintiff."

From this decree plaintiffs appeal. The other facts sufficiently appear in the opinion of the court.

The foregoing statement of the facts, made by Chief Justice SHERWOOD, has been adopted by me in preparing the accompanying opinion as a clear and lucid statement of the record.

*Grove & Nalle* for appellants.

(1) A mortgage for future advances cannot be extended to cover advances except those that were directly contemplated at the time of the execution of the mortgage. Jones on Chattel Mortgages, sec. 98; *Sims v. Mead*, 29 Kan. 124; *Monnet v. Ibert*, 38 Barb. (N. Y.) 24. (2) If the debts and liabilities of a mortgagor, or balance of accounts between them thus secured by mortgage, be at any time paid, such payment satisfies and extinguishes the mortgage and cannot gain fresh sustenance from other dealings; particularly is this so where rights of sureties are affected thereby. *Monnet v. Ibert, supra*. (3) When a married woman mortgages her property to secure debts or obligations of her husband, such act makes her a surety only, and all rights of a surety as against the principal or third parties apply to her. White & Tudor, Leading Cases in Equity, part 2, marg. p. 1010, Eng. & American Notes; *Loomer v. Wheelright*, Sandford's Ch. 155; *Knight v. Whitehead*, 26 Miss. 245. (4) When a wife unites in a mortgage with her husband to secure his obligations, she is entitled to have his property and his marital

Hach v. Hill.

interest in her property first sold and paid in exoneration of her estate in the mortgaged premises, and this equitable right is paramount to judgment creditors. *Nancewicys v. Gahn,* 3 Paige, Ch. (N. Y.) 614 ; *State ex rel. v. Boon,* 44 Mo. 262 ; *Wilcox v. Todd,* 64 Mo. 388 ; *Johns v. Reordem,* 11 Md. 465. (5) A surety (particularly a *feme covert* security) should never be held beyond the precise terms of their contract, and a court of equity will never lend its aid to fix a surety's liability beyond what he is fairly bound at law. *Ludlow v. Simond,* 2 Cain's Cases, 57 ; *Prior v. Kiso,* 81 Mo. 249 ; *State ex rel. v. Boon,* 44 Mo. 262. A surety is entitled to have a strict compliance of the contract, by the party relying on his responsibility, and whatever changes any risks or manner of performance or time will release the surety. *Smith v. Rice,* 27 Mo. 505 ; *Wilcox v. Todd, supra.* (6) The assignee for the benefit of creditors (Craig in this case) took the property subject to all equities of plaintiff, Clara E. Hach. Burrell on Assignments [Ed. of 1887] sec. 391, ch. 31 ; *O'Hara v. Jones,* 46 Ill. 288 ; *Roberts v. Corbin,* 26 Iowa, 315 ; *Van Husen v. Bandcliff,* 17 N. Y. 580. (7) A married woman as to her general property is incompetent to contract, and no acts of her or her husband can operate as an estoppel. Schouler on Husband and Wife [Ed. 1882.] sec. 179 ; *Shroyer v. Nickel,* 55 Mo. 261 ; *Whitney v. Stewart,* 63 Mo. 360.

*Gibson, Bond & Gibson* for respondents.

(1) A married woman may mortgage her general estate in lands. *Rines v. Mansfield,* 96 Mo. 400 ; *Hagerman v. Sutton,* 91 Mo. 519. (2) It is well settled in this state, that the finding of the chancellor will be deferred to by this (supreme) court, unless he has manifestly disregarded the evidence. *Snell v. Harrison,* 83 Mo. 658 ; *Matthias v. O'Neil,* 94 Mo. 520 ; *Gill v. Ferris,* 82 Mo. 168 ; *Rozle v. Jones,* 78 Mo. 403 ;

*Chapman v. McIlwrath,* 77 Mo. 43; *Hodges v. Black,* 76 Mo. 537; *Cheaton v. Allen,* 70 Mo. 366; *Sharp v. McPike,* 62 Mo. 300. ( 3) A purchaser by quitclaim deed for value acquires the title as against prior unrecorded deeds of which he has no notice. *Munson v. Ensor,* 94 Mo. 509; *Campbell v. Gas Co.,* 84 Mo. 352; *Willingham v. Hardin,* 75 Mo. 429; *Fox v. Hall,* 74 Mo. 315. ( 4) Extension of time of payment of debt, for a definite period, is a valuable consideration for deed of trust to secure creditor. *Martin v. Nixon,* 92 Mo. 26; *Cass v. Oldham Co.,* 75 Mo. 50; 1 Jones on Mortgages, sec. 459.

GANTT, P. J.—The petition is based on the principle that a warranty deed executed to secure advances, or a loan, though absolute on its face, may be declared a mortgage only. The contract of Hach with Hill, Nall & Co. was the consideration, and the only consideration; for the deed from Mrs. Hach to Hill, Nall & Co. and the two papers will be read together, in giving effect to the deed.

The trial court correctly held that the warranty deed was intended by the parties thereto as a mortgage to secure advances to be made by Hill, Nall & Co. to Nicholas Hach, and Mrs. Hach was competent to mortgage her land for that purpose, and her admissions that she executed the deed for that purpose are binding upon her, and we adhere to the view expressed in paragraph 1 of Judge SHERWOOD's opinion in division numbered 1.

The proper construction of the contract between Nicholas Hach and Hill, Nall & Co. is the main object to be attained by the judgment of this court.

The view taken by the appellants is so radically different from that held by respondents, that the most careful consideration is demanded. The appellants contend that the contract, read in the light of the surrounding circumstances and the objects in view, is one for the reimbursement of Hill, Nall & Co. for the re-equipment

of the stave factory and placing it in running order, whereas Hill, Nall & Co. insist that it was to secure them not only the advances to restore the property, *but all the losses incurred by them during the time, some four or five years that they ran the factory*, these losses amounting, according to the finding of the circuit court, to $4,725.72, and interest on the same to date of the trial below, $1,585.46, or a total of $6,311.18. The language of the contract is: "The party of the second part contracts and agrees with said party of the first part to complete said factory at and within reasonable cost and time; to equip the same for a stave and head factory; to keep an account of all money expended; and on the expiration of this contract to reconvey to said party of the first part said factory together with said steamboat, provided said party of the first part pays to said party of second part all indebtedness due them for the completion of said factory or on any *other account whatever*, to pay said party of the first part nine per cent., net, on all staves, heading or products of any kind made at said factory."

The contract was to continue two years. If unprofitable, Hill, Nall & Co. might discontinue without claim from Hach for damages. Hach testified that, at the time of conveying the premises, the old factory had been burned, and, to get it rebuilt, he and his wife made the deed, and he the contract with defendants, Hill, Nall & Co.; that it cost $902 to rebuild. This was all the money the firm furnished. The factory burned again in 1880, but it had been insured for $3,000; this was collected and the factory again rebuilt at a cost of $1,685.35. He testified that, at the expiration of the two years, no new arrangement was made. He applied to the company for a statement and settlement, but could not get one. The firm and Craig, their assignee, have continued to use the property not only during the two years, but up to the trial, some six or seven years.

The rental of the property was fairly worth $100 per month. Dines, one of the firm of Hill, Nall & Co., testified that his firm had run the factory themselves "*on their own account*," some four years before it went into Craig's hands. Hach had no control, real or apparent, after the two years expired.

The construction we place on this contract and deed is, that this deed was intended as a mortgage to secure advances to be made for the benefit of Hach; these advances must be gathered from the written contract executed contemporaneously. From this contract we understand Hach undertook to turn over the property and business to Hill, Nall & Co. for two years and give them his services and experience in running the factory. Hill, Nall & Co. were to rebuild and equip the factory and keep an account of all money expended, that is to say, *in building and equipping the factory.*

Hach was to receive as compensation for his services nine per cent. By the contract, he was to have no other interest in that business. His contract for a per cent. on sales, with no liability for the profits or losses, did not constitute him a partner. *Wiggins v. Graham*, 51 Mo. 17; *Campbell v. Dent*, 54 Mo. 325; *Gill v. Ferris*, 82 Mo. 156.

At the end of two years the property was to be returned to Hach, provided he repaid the amounts expended and all other indebtedness whatever.

One rule of construction is that which the parties themselves by their conduct put upon their contracts. Before Hach can be charged with the losses attending this business, let us see how Hill, Nall & Co. treated his relation to them. After two years, Dines says that they ran the factory on their own account. If they did, certainly no court would expect Hach to suffer the losses or bear the expenses of a business in which he was in no way interested.

Again, they paid him wages at $2.50 per day. So that he was neither a partner by virtue of his contract,

Hach v. Hill.

nor is he recognized or consulted as such by the firm in charge of the business, and the payment of daily wages negatives the idea that he was a partner in any sense.

Was he a grantor? There is nothing in the contract itself that guarantees Hill, Nall & Co. against losses. On the contrary they expressly reserve the right to discontinue when the business proves to be a losing one. They now testify it was a losing business all the time. If this were true, and knowing that Mrs. Hach stood as surety for their losses, their conduct had little in it to commend them to consideration in a court of justice; but we think the evidence clearly shows they were running the business on their own account, and Dines swears that he supposed Hach *had abandoned the contract.* To permit his firm now to charge Mrs. Hach's property as they were permitted to do in the court below with the total amount of payments made for all purposes on account of this factory during the whole time from the entering into the contract up to the transfer to Craig, including purchase of stave timber and wages of employes and incidental expenses, would in our opinion be unjust and inequitable, and not justified either by the language of the contract or the circumstances of the parties. Why should Hach suffer the losses of a business in which he was not a partner and had no interest beyond his salary fixed at nine per cent. of the sales of staves, heading and products? "A construction that would bring about such a result ought to be adopted with great hesitation," and we cannot bring ourselves to such a view.

We think an account ought to be taken of the moneys expended in rebuilding the factory the first time. To this ought to be added interest at six per cent. until the receipt of the insurance money received from the fire. An account of this should be taken. If it exceeded, as Hach testifies, the necessary cost of

rebuilding and repairing, then that balance should be used in reducing the original advancement and interest, and the balance, if any so left, should bear interest to the date of the accounting.

On the other hand, it appears that the property was worth $100 a month rent. An account of these rents after the two years should be taken also with interest at six per cent. from the end of each year. As to the claim made by respondents that the court below found for Craig, we have only to say Mr. Craig is not here complaining of the decree, and the claim that he was an innocent purchaser for value without notice' is utterly inconsistent with a decree in favor of plaintiffs. Had the court so found, there would have been no occasion for a finding and decree permitting plaintiffs upon the payment of the balance found due to redeem the lot.

But as this case must be reversed for a new accounting we do not adjudge what Craig's rights are. The evidence and the decree are too indefinite to justify us in deciding whether he is an innocent purchaser or not. That will depend upon his showing, and the burden is on him to establish that equity.

For these reasons, the cause is reversed and remanded for new trial in accordance with these views.

SHERWOOD, C. J., and BLACK, BRACE and MAC-FARLANE, JJ., concur; Judge BARCLAY dissents, and THOMAS, J., not sitting.

### SEPARATE CONCURRING OPINION.

SHERWOOD, C. J.—This cause has been *thrice* argued, the foregoing opinion following the ruling announced in 15 S. W. Rep. 970.

Why this cause should have been sent over to plague court *in banc* is to me a matter of profound astonishment, seeing that the point of attack was that the contract between the parties had been incorrectly construed in the previous opinions, in that it was *there*

held not to contain any agreement or guaranty on the part of Hach to pay the running expenses of the stave factory. When I wrote the first opinion in this cause, and came to construe that contract, the claim of counsel for Hill, Nall & Co. to the effect that there was in the contract such a guaranty struck me as *so preposterous* that I called in to my aid one of the present concurring judges, who, after a careful examination of the contract in question, entirely agreed with me that the contract could not be construed as contended for by the counsel of Hill, Nall & Co. And so the construction first given that contract still stands, and is now upheld by every sitting member of this court except one. But this has been accomplished only at the cost of much expenditure of time and delay of court, counsel and parties litigant. If there is a single sentence, a single line, a single word, a single syllable or a single letter in that contract giving credence or currency to the idea that the land of the wife was to be bound for the running expenses of the establishment, I would like to have it pointed out.

But I have heard that it has been persistently and industriously urged, but *not* by *counsel,* that "somehow or somehow else" there is something in the *testimony* which ekes out and supplements the *written* contract, and that this supplies any lack in that contract in the particular aforesaid. But there is no such testimony, not an iota of it, granting indeed that such testimony would be competent in a case of this kind, to add by mere parol to the burdens of the wife's land; especially so, when there is no hint or intimation in the answer that any change in the written contract had been made by a subsequent parol agreement.

The premises considered, I say this: That some good, or at least plausible, reason should be furnished an expectant bar as an excuse for the triple dissents and consequent delay aforesaid, and anything will be better than a *barren* and *voiceless dissent,* which

*dumbly* questions the correctness of reasoning which it durst not venture by word or token to combat.

I trust, therefore, that my learned brother will not let me "burst in ignorance" as to his views on this subject, which, if timely expression be given them, may shed such a flood of light on the point in hand as will enable these parties litigant so to order their cause as to hasten to a speedy and correct termination their present legal contest.

I shall, therefore, look forward with anxious, yet pleasing, expectation for an expression of my learned brother's views, and trust that in this I shall not be disappointed.

BARCLAY, J. ( *dissenting* ).—Ordinarily, it would not seem necessary to enlarge a dissent in a case like this. The difference of opinion developed does not appear to involve any important rules of law, but relates rather to the proper application of acknowledged principles to the peculiar facts of the particular case. An expression of views that have not prevailed, in the disposition of such a cause, can be of little, if any, permanent value, and, usually, had better be withheld. But there may be occasions calling for such an expression, and this appears to be one of them.

Without elaborating the reasons for all the positions taken, it may be proper to indicate, as shortly as possible, the grounds on which, it seems to me, the judgment given by Judge THOMAS in the trial court should be affirmed.

The interpretation of the contract between Mr. Hach and the firm of Hill, Nall & Co. has become the leading feature of the case here. Plaintiffs rely on that contract to impress upon the absolute deed ( made by them to Hill, Nall & Co.,) the character of a mortgage. Its terms have been already stated.

My idea of the transaction of which it forms part is that Hill, Nall & Co. were to advance (as a loan to

Hach v. Hill.

Mr. Hach) the funds necessary to rebuild, equip and run the stave factory, during the two years specified, receiving and selling the product thereof, and holding the legal title to the factory as security, until the repayment of their advances.   It seems to me that such is the reasonable and natural construction of the contract and gives effect to the obvious intention of the parties thereto.

The opinion of the majority of the court *in banc* restricts the scope of the security to much narrower limits, whereas the agreement itself expressly secures to the "party of the second part" (Hill, Nall & Co.) the payment of "all indebtedness due them for the completion of said factory *or on any other account whatever.*"

Whether the prevailing opinion gives full effect to that language each reader of the case may determine. To my mind it falls far short of doing so.

The contract moreover provides that Mr. Hach should receive "nine per cent. net on all staves, heading or products of any kind made at said factory," and that he should "give said party of the second part his best services and experience *in running said factory* under the direction and control of said party of the second part."

These and other parts of the writing show that the parties contemplated that the factory should be run during the two years' term of the contract, unless the party of the second part should meanwhile determine that it was "unprofitable" to do so, as stated in another clause.   Looking at all these provisions, is it in accord with common business experience to suppose that the parties thereby intended to impose on Hill, Nall & Co. alone the expense of equipping and carrying on the factory while giving Mr. Hach a large "net per cent." on the out-put?   Especially, as it is conceded that that firm accepted the legal title only as security for their advances, and in circumstances which plaintiffs, in their

petition, describe as follows: "At that time" (namely, the date of the contract) "and for a long time prior thereto, that the said lot had been in the possession of the plaintiff, Nicholas Hach, who erected a stave factory thereon, which he had run and used for several years, but that a short time before the date aforesaid had been partially destroyed by fire ; that because of such fire the said Hach had become unable to raise sufficient money to repair and place in running condition the said stave factory and place therein suitable machinery and stock to successfully conduct said business, without procuring loans and assistance; that he appeared to the said defendants, Hill, Nalle and Dines, who were then copartners, doing business by the firm-name of Hill, Nall & Co., at Fredricktown, Missouri, who agreed to loan," etc.

Do not the terms of the agreement itself, in the light of its surroundings, rather indicate that the substance of the arrangement was that Hill, Nall & Co. were to advance (on the security of the realty) the needed capital to make the factory a going concern, under the personal charge of Hach (but subject to their supervision), thereby affording him a business opening he otherwise might not have had, and an opportunity to establish a trade and to assume sole ownership, if successful, by repaying the borrowed capital used in putting the enterprise on its feet ?

In plaintiff's petition it is stated that Mr. Hach gave to Hill, Nall & Co. "his services and experience in the running of said stave factory and the manufacture of staves and heading and conduct of the business of procuring stock and shipping the same to market, and did so manufacture, and large sales were made;" and, further on, that, "after the rebuilding, he, Nicholas Hach, continued to conduct said business as aforesaid;" and, then again, that plaintiffs "have never parted with the possession of said lot, but that the said Nicholas Hach has always retained the possession

Hach v. Hill.

thereof in his own right, and now has the possession thereof." ( The possession here referred to is evidently actual, as distinguished from that which merely follows the legal title. The latter is concededly in defendants,. according to the petition. )

Now these facts seem to me to furnish a construction of the contract, by Mr. Hach himself, in harmony with that heretofore suggested as the correct one. The arrangement which that interpretation would imply involves nothing illegal, extraordinary or oppressive.

In my judgment the funds necessary to obtain the raw material for manufacture, and to "run" the factory, were quite as much in contemplation, as part of the advances to be made to Mr. Hach, under the agreement, as was the sum required for the preliminary object of rebuilding the factory. This seems to me evident from the general drift of the contract, and especially from the fact that it purports to secure to Hill, Nall & Co. the payment of "all indebtedness due them for the completion of said factory or on any other account whatever."

Something has been said about the peculiar rights of Mrs. Hach, in the premises, as a surety. It will be noted that the deed, in which she is a grantor is an absolute conveyance of the property, and that the collateral agreement under consideration, which plaintiffs seek to enforce, provides for a reconveyance to Nicholas Hach, upon payment of the loan secured. So far then, as concerns the rights of the defendants in this case, Mrs. Hach has parted with her interest in the land, and no injustice is done her by treating the facts as though Mr. Hach were the sole plaintiff.

For the foregoing (among other) reasons my dissent to the reversal of the judgment has been, and is yet, interposed.