## MRS. W. J. POWELL, Appellant, v. CROW et al.

### Division One, May 29, 1907.

1. **SUIT TO QUIET TITLE: Scope of Decree: Deed as Mortgage: Homestead.** There is no authority under the statute to quiet title (Revised Statutes 1899, sec. 650) for the court to do more than to ascertain and determine, define and adjudge the title, interest and estate of the parties severally in and to the real estate. Where defendant bought at execution sale land which had previously been conveyed to plaintiff, and the real controversy in the case is whether or not that conveyance was a mortgage for the security of plaintiff's debt or an absolute deed, the court, on finding it to be a mortgage, can go no further than adjudge plaintiff's title to be that of a mortgagee to the extent of the debt due, and that defendant's title is that of the owner of the equity of redemption. It cannot go further and adjudge that the mortgagor has a homestead in the land, decree the foreclosure of the mortgage, and divide up the proceeds among the plaintiff, defendant, and the homesteader.

2. ———: ———: **Interest of Persons Not Parties.** A decree in a suit to quiet title cannot dispose of the interests of persons not parties. And where the common source of title asked leave to file answer, but did not do so, and the pleadings tendered no issue to him, an adjudication as to him is without any juridictional basis.

3. **MORTGAGE OR DEED: Evidence or Conclusions.** Where the whole issue is whether a deed absolute on its face was in fact an absolute conveyance in payment of the debt, or was in fact a mortgage to secure the payment of the debt, the intention of the parties is to be derived from what the parties did and said at the time, the circumstances, and who retained the notes evidencing the debt, and not from the conclusions of the witnesses as to what was done and said.

4. ———: **Burden: Doubt Resolved in Favor of Mortgage.** The burden of showing that the deed absolute on its face which plaintiff holds, was in fact a mortgage given to secure plaintiff's debt, is on the defendant who bought the property at execution sale after the deed to plaintiff was executed.

   *Held,* by Graves, J., in a separate concurring opinion, that, if there is a doubt, from all the facts developed, as to whether the transaction was a mortgage or a conditional sale, such doubt should be resolved in favor of its being a mortgage.

Appeal from Crawford Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*J. B. Harrison* for appellant.

(1) The evidence was wholly insufficient to warrant the court as a court of equity to declare a deed absolute on its face to be a mortgage. The evidence is not clear, cogent and convincing, and the facts and circumstances surrounding the transaction will not support the finding of the court. (2) Even though the evidence warranted the court in finding that the warranty deed was only a mortgage, the court erred in not making an equitable accounting between the grantor and grantee upon the consideration of said warranty deed, the consideration of said deed being $3,446 and drawing interest at the rate of eight per cent, and wherein there had been one year's rental, amounting to $206 and accrued interest from 1898 thereon, which appellant was certainly entitled to under an equitable accounting between the grantor and the grantee. (3) The court erred in adjudging and ordering that the equity of redemption in and to said land should be foreclosed, in this, that the court failed to provide that all costs and expenses of the foreclosure should be paid, and that the sum of $3446, together with all accrued interest thereon from the date of the redemption, should be paid out of the residue of the sale of said lands before any distribution should be made to either of the defendants, Martin or Crow. (4) The court had no jurisdiction to order the foreclosure and sale of the land in a suit to quiet title. The court must deal with the record title, or such equity as may arise out of the record title. But in a suit to quiet title it cannot order partition, or order a foreclosure all in the same judgment. (5)

The court erred in undertaking to appropriate a part of the residue arising from the sale of the homestead in paying off the indebtedness of appellant, as Francis Martin, if he was entitled to a homestead interest in and to said lands, had the right to claim before the sale of the same, his homestead, and if the same could not be set out in kind he had the right to have all the residue appropriated to the payment of his $1,500 without having the same prorated on the amount which he had mortgaged. Book v. Beasley, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335; Jones v. Rush, 156 Mo. 367; Reilly v. Cullen, 159 Mo. 322; Chance v. Jennings, 159 Mo. 544.

*Frank H. Farris* for respondents.

A deed absolute in form may be shown by parol testimony to be a mortgage. Book v. Beasley, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335; Reilly v. Cullen, 159 Mo. 322. Every conveyance of land which is in fact, whatsoever may be its form, a security for a debt, contemporaneous or antecedent, is in equity a mortgage. Turner v. Kerr, 44 Mo. 429; Armour Packing Co. v. Wolff, 59 Mo. App. 665; O'Neill v. Capelle, 62 Mo. 202; Hargadine v. Henderson, 97 Mo. 375; Book v. Beasley, 138 Mo. 455; Bobb v. Wolff, 148 Mo. 335; Jones v. Hubbard, 193 Mo. 163. The character of the conveyance is determined by the clear and certain intention of the parties; and any agreement showing that the parties intended that the conveyance should operate as security for the payment of money, will make it such, and give to the mortgagor the right of redemption. Reilly v. Cullen, 159 Mo. 330; Hargadine v. Henderson, 97 Mo. 386; Bobb v. Wolff, supra; 1 Jones on Mort., sec. 162; Turner v. Kerr, 44 Mo. 429; Book v. Beasley, supra; O'Neill v. Capelle, 62 Mo. 202.

VALLIANT, P. J.—This is a suit under section 650, Revised Statutes 1899, to quiet title to 319 acres

of land in Crawford county. In the petition the plaintiff states that she is the owner of the land in fee simple, that she is informed and believes that the defendant W. N. Crow claims title to the land adverse to her claim and prays that he be summoned to come in and show what he claims, and that the court will ascertain and determine the estate of plaintiff and defendant respectively and by its decree adjudge who has the title, and general relief.

Defendant Crow answered that he bought the land at the sheriff's sale under execution against one Francis Martin and believes he thereby acquired perfect title to the same; he also says that the plaintiff's interest is derived from a deed from Francis Martin to her which, though absolute in form, was in equity only a mortgage to secure a debt Martin owed her. Defendant also prays that the court will determine the respective interests of the parties to the land.

After the evidence was all in Martin, under whom both parties claim, asked the court to make him a party defendant and the court so ordered, but he filed no pleading of any kind and took no part in the proceeding.

On the trial the plaintiff introduced in evidence a warranty deed from Francis Martin to herself, conveying the land in fee, dated September 6, 1898. Then the plaintiff rested. Defendant introduced a judgment of the circuit court in his own favor against Martin for $1,679, and a deed from the sheriff under execution on that judgment, conveying all of Martin's right, title and interest in the land to defendant, dated February 21, 1901, and then introduced testimony tending to show that the plaintiff's deed from Martin, though absolute on its face, was really designed by the parties to be only a security for a debt Martin owed her. That was the main controversy in the case.

The court found that issue for the defendant and

adjudged that the plaintiff's deed was an equitable mortgage, that there was due her on the mortgage debt from Martin $3,449 and interest, that Martin had a homestead in the land to the extent of $1500 value, decreed that the mortgage be foreclosed by sale of the land, that out of the proceeds, after payment of costs, fifteen hundred dollars be set apart as representing the homestead and that the plaintiff's debt be paid pro rata out of the $1500 and the residue of the proceeds and what was left of the $1500 was to be paid to Martin and what was left of the residue was to be paid to defendant. From that judgment the plaintiff appealed.

I. The decree went beyond the scope of the statute under which it was brought. When a court of equity acquires jurisdiction of a cause for any reason peculiar to original equity jurisprudence it will retain the cause for all purposes, do full justice between the parties instead of relegating them to another forum. But this is not the ancient equity suit to quiet title; the only authority for its institution or maintenance is contained in section 650, Revised Statutes 1899, which prescribes who may bring the suit, the purpose for which it may be brought and the extent to which the decree may go in adjusting the rights of the parties. That section is in these words:

"Any person claiming any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate and to define and adjudge by its judgment or decree the title, estate and

interest of the parties severally in and to such real property.''

There is no authority in that section for the court to do more than to ascertain and determine, define and adjudge the title, interest and estate of the parties severally in and to such real estate. [Seidel v. Cornwell, 166 Mo. 51; Howard v. Brown, 197 Mo. 36, l. c. 50.]

If on a retrial of the cause the chancellor should find that the transaction between the plaintiff and her father, Francis Martin, which resulted in the deed she offered in evidence, was really intended as security for the debt her father owed her, that the debt was not extinguished, but remained, after the delivery of the deed, a personal obligation upon which she could maintain an action at law, then the court would be within the scope of the statute if it should adjudge that her title was that of a mortgagee to the extent of the debt found due, and that the defendant's title was that of the owner of the equity of redemption, and, except a judgment as to costs, that is the extent to which the judgment could go.

II. The decree undertakes to dispose of Martin's interest in the land, but he is not in this case. The record shows that at the close of the trial he asked to be made a party defendant and his request was granted, but it would seem that he afterwards thought better of it and concluded not to avail himself of the privilege granted but to remain out; at all events he filed no pleading of any kind, and there is nothing in the record on which a judgment either for or against him could rest. There is no issue tendered to him either in the plaintiff's petition or in the defendant's answer, therefore there is nothing on which to base a default against him, and as he filed nothing asserting any claim or tendering any issue to either of the parties, the decree as to him is without any jurisdictional basis.

III. As to the main question of fact involved we think that before a final review of the evidence by this court justice will be better served by sending the cause back to the learned trial judge that he may hear the evidence that may be adduced on a retrial with the issues limited to the scope indicated in this opinion.

The question is one of fact. In the execution of the deed of September 6, 1898, by Francis Martin to the plaintiff, Mrs. Powell, was it the intention of the parties that the deed should be taken as payment of or only as security for the debt the grantor owed the grantee? If it was intended as a payment then the absolute title passed to Mrs. Powell and therefore the defendant acquired no title under his sheriff's deed. But if it was intended as security only then Mrs. Powell became thereby the equitable mortgagee, and when the defendant bought at the sheriff's sale if, in the face of Martin's homestead right, he acquired any title at all, (as to which the case at this time does not call for a decision), it was only the equity of redemption.

There seems to have been an oral agreement between the parties to the deed to the effect that at any time thereafter, if Martin so desired, the plaintiff would reconvey the land to him on his paying her a sum equivalent to the amount of the then existing debt.

According to the plaintiff's theory her purchase was absolute and the oral agreement was outide of the deed; it contemplated only a repurchase by Martin at an indefinite period in the future, if he should ever so desire. According to the defendant the agreement entered into the consideration of the deed itself and reduced the transaction from an absolute sale to an equitable mortgage for the security of the debt.

In our effort to arrive at the real intention of the parties we must consider what they did and said at the time, the circumstances surrounding them and their close relation to each other—father and daughter. If

there is no suspicion or suggestion of fraud in the case, and no great disproportion, if any, between the value of the property at the time of the sale and the amount of the debt, there is no reason appearing on the face of the transaction for the execution of a deed absolute in form if the parties really intended to execute a mortgage. The burden of proof therefore is on the defendant.

The parties, in adducing their evidence, ought to try to show the court what in fact was said and done rather than a statement now as to what each understood was the legal effect of the transaction. When the court is informed of the facts it will adjudge the legal effect. The parties may not now be able to remember the exact words that were used, but they can remember substantially what was said and what was done.

In the trial of a case of this kind we easily fall into the error of eliciting from the party who is a witness his or her conclusion from the facts rather than the facts themselves. This is illustrated by the evidence as it was adduced at the trial in this case; the plaintiff as a witness in her own behalf having stated that the agreement was that Martin would deed the farm to her for the consideration of five hundred dollars and the mortgage she held, which she had bought from the St. Louis party who held it, and she agreed to permit him to live on it as long as he lived with the payment of certain rent, and thereupon the deed was executed and contemporaneously a lease from her to him, on cross-examination she was asked: "At the time you got the deed from your father it was the understanding between you and him if he wanted to and would repay you the amount of money that you had loaned him that you would deed him the land back? Yes, sir. And when your brother came to you with the proposition to

buy the land you consulted your father? Yes, sir; as
I stated before that I merely wanted to hold the land
so that my father could live there. As security for
your money? Yes, sir; that is always the first consid-
eration." By that cross-examination we learn more
of what was in the daughter's mind and heart than we
do of what was said and done and whilst it was com-
petent cross-examination yet it did not quite probe to
the facts.

Martin was a witness for defendant, he was asked
by defendant's attorney: "At the time you made the
deed to her you had an understanding with her by
which if you repaid her this money she was to deed
the land back to you? If I ever wanted it. Then you
had the right if you wanted to pay her back those
notes? No, sir, not to pay her back those notes. To
pay her the same amount she paid to you? Yes, sir.
And if you did and wanted the land back she was to
deed it back to you? Yes, sir, that was the understand-
ing; if I ever wanted it back she was to deed it back
to me." These answers of the two witnesses show no
disposition to conceal or prevaricate, but they state
conclusions not facts. There was one fact in the case
that the evidence leaves somewhat in doubt, that is the
disposition that was made of the notes when the deed
was executed. Were they delivered to the debtor or
were they retained by the creditor? Neither side of-
fered direct proof on that point. The notes were in
evidence and were respectively marked "cancelled"
and "paid," the mortgage note was cancelled on the
record.

When the vital question before the court was, was
this deed executed as payment of the debt or only as se-
curity for it, the disposal made of the notes at the time
was one of some importance, we do not say conclusive,
but one of substantial significance to be weighed by the
trier of the facts with the other facts in the case.

Without intending by what has been said to intimate any opinion on the question of fact, we think that justice will be better served by a re-trial; therefore, the judgment is reversed and the cause remanded to be tried *de novo*. All concur.

### SEPARATE CONCURRING OPINION.

GRAVES, J.—Upon consideration, I think that, for the errors on the face of the judgment, pointed out by Judge VALLIANT, the case should be reversed and remanded. I am of the opinion, however, that the present record shows sufficient facts for a finding that the deed is in fact a mortgage, but as suggested by my brother, the evidence could be much more fully and satisfactorily developed, and when so developed a clearer conception of the point would be possible. There are certain facts in the record which would tend to indicate that plaintiff might have simply paid her father's debt to the St. Louis creditor, and afterwards agreed with her father that as between him and her there was a new debt of $3446, made up of the amount which she had so paid the St. Louis party and the $500 note and interest loaned by her directly to him, which sum as a whole should run at six per cent interest, the deed to the farm being taken as security therefor. The rent specified in the lease is $206.76, which is exactly six per cent on the aggregate debt of $3446. But these facts are not fully developed and a new trial might add new light. If there is a doubt, from all the facts developed, as to whether the transaction between the parties was a mortgage or a conditional sale, such doubt should be resolved in favor of the mortgage.

That the exact facts may be brought out more fully and satisfactorily, I concur in the reversal and remanding of the cause.