WILLIAM L. WILLIAMSON et ux. v. DANIEL A. FRAZEE, NICK DAVIS and CHARLES KIEFER, Appellants.

Division Two, June 8, 1922.

1. **QUIETING TITLE: Equitable Issues.** In a proceeding under Section 1670, Revised Statutes 1919, if the issues tendered by the pleadings are equitable in their nature and call for equitable relief, the case is one in equity and is triable by the chancellor.

2. ———: ———: **Complete Relief.** Where a court of chancery acquires jurisdiction of a cause, within the limits of the pleadings it will give complete relief.

3. **DEED OR MORTGAGE: Intention.** A deed absolute on its face may be a mortgage, but whether an absolute conveyance or a mortgage must be determined from the intention of the parties at the time it was made; and if made to be the one or the other it retains the character intended at the time it was made, and the rights of the parties to it are determined accordingly.

4. ———: ———: **How Ascertained.** The intention of the parties to a deed, whether at the time it was made it was to be an absolute conveyance or a mortgage, is to be sought in the circumstances surrounding the transaction, and it is proper to inquire into their relative situation at the time, their prior negotiations, and generally into all pertinent facts having a tendency to fix and determine the real nature of their purpose and understanding. If there should arise a doubt as to whether the deed was intended as a mortgage or a conditional sale, such doubt should be resolved in favor of a mortgage.

Williamson v. Frazee.

5. ————: **Character of Proof: Inception: Application for Loan.** The burden of proof is upon the party who alleges that a deed absolute on its face was intended to be a mortgage, and the proof must be clear, cogent, unequivocal and convincing. Yet when the transaction had its inception in an application for a loan, the courts are inclined to scrutinize it closely and to hold it to be a mortgage, unless it clearly appears that the parties afterwards changed their minds.

6. ————: **Continuance as Mortgage.** If the relation of debtor and creditor, established at the inception of the transaction, continues, the deed, absolute on its face, is a mortgage.

7. ————: ————: **Demanding Interest.** Where the evidence is clear, convincing and unequivocal that all negotiations leading up to the execution of the deed were to the effect that the relationship of borrower and lender was to be established between the grantors and grantees, a subsequent demand by the grantees that the grantors pay them one year's interest on the indebtedness shows that the character of the transaction was not changed about the time the deed was executed, and that the grantees intended and understood that the deed was to continue as a mortgage.

8. ————: ————: **Discharge of Prior Indebtedness.** Where the property was incumbered with certain indebtedness at the time it was conveyed by a deed absolute on its face, it was the duty of the grantees, having paid the mortgage notes, to discharge and surrender them to the grantors as a part of the purchase price if the deed was intended as an absolute conveyance; and the fact that they retained them and never treated the debt as discharged is evidence that the relation of debtor and creditor, having been established by clear and cogent proof at the inception of the transaction, continued, and that such relation was not subsequently changed.

9. ————: **Deference to Chancellor.** While it is the duty of an appellate court on appeal from a judgment in a suit in equity, to weigh the evidence and reach its own conclusions, it may defer to the findings of the chancellor who heard the witnesses, and particularly so where the substantial evidence supports his findings.

Appeal from Scotland Circuit Court.—*Hon. James A. Cooley,* Judge.

AFFIRMED.

294 Mo.—21

*J. M. Jayne, J. E. Luther* and *Ben. Franklin* for appellants.

(1)   The deed in question upon its face is a regular warranty deed.   The prima-facie presumption obtains in all such cases that the deed is just what it purports to be on its face, an absolute conveyance of land, and the burden is cast upon the grantor to overcome this presumption and establish it as a mortgage by evidence, clear, unequivocal and convincing; otherwise, the natural presumption must prevail.   Bobb v. Wolf, 148 Mo. 344;   Jones v. Rush, 156 Mo. 364;   Carson v. Lee, 219 S. W. 633;   Rinkle v. Lubke, 236 Mo. 387;   Gerhardt v. Tucker, 187 Mo. 57;   Burk v. Murphy, 275 Mo. 410; Duell v. Leslie, 207 Mo. 666;   Bailey v. Trust Co., 188 Mo. 483.   (2)   Not only was the burden upon the plaintiffs to prove that the warranty deed they gave was a mortgage beyond a reasonable doubt, but it devolved upon them to prove the terms and the contract between them and the defendants, as well as the conditions under which they were to be permitted to redeem.   Bobb v. Wolf, 148 Mo. 335.

*H. V. Smoot* and *Campbell & Ellison* for respondents.

(1)   The evidence demonstrates beyond question that appellants and respondents in the beginning met upon the ''footing of borrowing and lending.''   The plaintiffs' evidence on that branch of the case is that defendants proposed to get a number of men to become sureties for plaintiffs so as to prevent a sale of their home; that failing to get others to join them the three appellants, who were amply able financially to do so, concluded they would become sureties for the plaintiffs, provided their debts could be reduced to an amount not in excess of seventy dollars per acre on his land.   It is clear, not only from plaintiff's testimony, but from that of defendants

as well, that defendants in the beginning intended to take some kind of title to indemnify them for becoming surety on plaintiffs' debts.   This situation may bear upon the question as to where the burden of proof lies. Cobb v. Day, 106 Mo. 295.   If from the whole evidence the matter be in doubt, the court will resolve the doubt in favor of a mortgage.   Book v. Beasley, 138 Mo. 463; Britewell v. McAfee, 249 Mo. 562.   (2)   Counsel have evidently overlooked the numerous conversations, statements, and declarations of their clients, to the effect that in the beginning they were willing to take the land as security provided the debts of plaintiffs could be reduced so that the land would not be charged with more than seventy dollars per acre.   And they also made the express admission that it was the intention in the beginning to take the land as security.   (a) A court of equity, in construing a contract, always seeks the intention of the parties.   If the language of the contract, whether oral or written, is ambiguous, the contract does not fail for that reason, if the intention of the parties can be ascertained.   If a deed, absolute on its face, is intended as a security, a court of equity will hold it to be a mortgage.   Book v. Beasley, 138 Mo. 461.   (b)   Defendants admit that the original plan was to take "some kind of title" as security.   We therefore need not trouble ourselves about the intention of the parties in that respect prior to the 10th of January.   Defendants contend that the original plans were abandoned and a straightout purchase agreed upon.   Respondents contend no change was ever made in the original plans.   Significant, if not controlling, circumstance, is the fact that as a part of the transaction plaintiffs executed a warranty deed, a note for $4500, a chattel mortgage securing the same, and a bill of sale, absolute on its face, which conveyed all of the personal property which plaintiffs owned except their household goods.   What induced the plaintiffs to divest themselves of all of the property they owned except their household goods, for the sole purpose of reducing the

debts on their land to the sum of seventy dollars per acre, and then to convey same to the defendants, unless it was that they were given the right to redeem? Plaintiffs afterwards made valuable and costly improvements on the land. We are justified in saying that there is not a circumstance in the entire case that does not point to the transaction as being a mortgage, and not a deed. (c) The chancellor found the deed to be a mortgage. Such finding is not conclusive on this court. Gibson v. Shull, 251 Mo. 485. The chancellor heard the witnesses, saw what this court cannot see. He observed their manner whilst they attempted to explain their many self-contradictions and inconsistent statements, and therefore his finding should have great weight with this court. Britewell v. McAfee, 249 Mo. 582.

REEVES, C.—This is an action under Section 1970, Revised Statutes 1919. The issues tendered by the pleadings are equitable in their nature, and hence it is a proceeding in equity.

Plaintiffs sought to have a warranty deed, absolute on its face, declared a mortgage. They prevailed below, and some of the defendants have prosecuted their appeal to this court.

The petition alleged that plaintiffs (husband and wife, respondents here) were the owners in fee simple of 556 acres of land in Scotland County; that on the 14th day of January, 1918, they made, executed and delivered to defendants, Daniel A. Frazee, Nick Davis and Charles Kiefer, an instrument of writing whereby they conveyed to the said defendants all of said lands, subject to an incumbrance of $25,000 in favor of the State Savings, Loan & Trust Co. of Quincy, Illinois, dated the 20th day of January, 1915; that also they had on the 29th day of September, 1916, executed and delivered to the Citizens Bank, Gorin, Mo., a deed of trust to secure their promissory notes for $14,000 which deed of trust was second and subordinate to the deed of trust for $25,000; that plaintiffs had defaulted in the payment of their prom-

issory notes to the said Citizens Bank of Gorin, and that the trustee named in said deed of trust had at the instance of the holder of said notes proceeded to advertise said property for sale, and that the sale was to occur on the 15th day of January, 1918; that plaintiffs were in straitened financial circumstances and applied to the defendants, Frazee, Davis and Kiefer, who were neighbors and friends, to assist them in preventing a sale; that thereupon an arrangement was made by plaintiffs with the said defendants, whereby it was agreed that the said defendants would advance to plaintiffs a sum sufficient to pay off said notes, interest and deed of trust and other debts owing by plaintiffs and growing out of said loans on said real estate, conditioned that the plaintiffs would convey to the said defendants all of said real estate to be held by the said defendants as agents and trustees of plaintiff.

It was further alleged that said defendants would utilize the productivity of said property and apply the proceeds toward the liquidation of the indebtedness, including all sums advanced by the defendants and all taxes due and accruing on said land, and would apply any surplus to the liquidation of the principal indebtedness, and that for the discharge and liquidation of said principal indebtedness the said defendants were further authorized and empowered to sell a portion of said real estate and execute deeds therefor, and that upon accomplishing the purposes of said trust or agency the said defendants would re-convey to plaintiffs all that remained of said real estate; that at all times it was understood the said defendants would re-convey said property to plaintiffs upon payment by plaintiffs of the sums advanced by defendants in the payment and discharge of the notes above described, and other items of indebtedness of plaintiffs, and that in such event defendants would faithfully account to plaintiffs for all sums of money received by them from the rentals of said lands.

Plaintiffs alleged that, reposing full confidence in the said defendants, they executed and delivered a war-

ranty deed to said property in accordance with the fore-going agreement, and which deed was duly recorded in the office of the Recorder of Deeds in Scotland County, but plaintiffs averred that while said warranty deed pur-ported on its face to have been executed for a con-sideration of $39,000 and appeared to be an absolute conveyance of said real estate to defendants, yet in truth and in fact it was intended by all of said parties, at the time, to be only a mortgage and security to the said de-fendants to secure them in the sums of money advanced or to be advanced by them to prevent a foreclosure of the deed of trust securing $14,000, and for the further purpose of enabling said defendants to make a sale of a portion of said property to raise funds to reimburse themselves and to discharge existing indebtedness.

It was further alleged in the petition that defendant Charles Powers claimed an interest in a portion of said land arising from a contract of purchase entered into be-tween him and the other defendants, whereby for a stip-ulated consideration the other said defendants had agreed to transfer to him 236 acres of said real estate. Plaintiffs further allege that during the years 1918 and 1919 the said defendants Frazee, Davis and Kiefer re-ceived over $13,000 on account of the rentals of said prop-erty, and that said sum, under the contract between plaintiffs and said defendants, should have been applied toward the payment of the interest due on the first deed of trust and on such sums as were advanced by defend-ants, including all taxes paid by them; that they desired to redeem said property, or such portion thereof re-maining unsold, and that they were ready and willing and, by their petition, they offered to pay the said de-fendants whatever sum or amount might be found to be due them, together with interest, and plaintiffs offered to comply with all the terms and conditions of the contract, as pleaded by them. There was a further allegation that at the time of the transaction in question, the property was reasonably worth $60,000, and at the time of the

suit had advanced to a reasonable market value of $80,000, and they further averred that the said defendants, Frazee, Davis and Kiefer, were claiming that the plaintiffs had no interest in said real estate and were asserting that the warranty deed above mentioned was intended as an absolute conveyance and not as a mortgage, and that otherwise the said defendants were refusing to comply with the terms and conditions of said contract and asserted absolute ownership of said property.

The prayer of the petition was that the court ascertain the amount of money furnished by defendants Frazee, Davis and Kiefer; ascertain and determine the amount of money received by them from rentals on said land; ascertain and determine the respective rights and interest of all of the parties; adjust the equities of all, and to declare the warranty deed executed by the plaintiffs on the 14th day of January, 1918, to the said defendants, to be a mortgage; that plaintiffs be adjudged and decreed the right to redeem said real estate therefrom, and that the said defendants be ordered and directed to execute a re-conveyance of such lands, or such portion thereof as remains unsold, to plaintiffs, and upon failure, to divest all the right, title and interest therein out of the defendants and vest same in plaintiffs, and for general relief.

The answer of defendants, Frazee, Davis and Kiefer, was a general denial, with the allegation that they were the absolute owners of said property and that they claimed title under the warranty deed mentioned in plaintiff's petition, and that pursuant thereto they had taken possession of said premises and held and enjoyed the use thereof, and that plaintiffs became their tenants and thereby were estopped to assert an adverse interest.

The separate answer of defendant, Charles Powers, admitted that plaintiffs were the owners in fee of said property on and prior to January 15, 1918, but said that whether the deed of that date to the other defendants

conveyed an absolute estate or was intended as a mort-gage, he did not know, but that whatever the terms, he averred that the grantees were given full power and au-thority to contract with him with respect to the pur-chase and sale of a portion of said premises, and that accordingly he had purchased 236 acres of said real es-tate for which he had contracted, and agreed to pay $29,500; that he had paid a portion thereof and stood ready, willing and able to complete the terms of his agreement, and he prayed for specific performance, or that the consideration already paid be restored to him.

Plaintiffs by their replication admitted that defend-ant Powers had purchased 236 acres of said land; that the other defendants had the power under the terms of the agreement to convey to him, and that he was entitled to specific performance of his contract in accordance with the terms thereof.

The testimony on the part of the plaintiffs tended to support the allegations of the petition, and there was no controversy over the interest of Charles Powers as to the 236 acres of said property and his right to com-plete the purchase thereof and secure a deed by paying the $29,500 or such portion thereof as remained unpaid. The testimony on the part of the defendants controverted that of the plaintiffs as to the intention of the parties at the time the warranty deed in question was executed. The defendants offered testimony tending to show that it was an absolute conveyance.

At the conclusion of the trial the chancellor below found that said warranty deed was intended as a mort-gage; that as contended by plaintiffs the grantees were clothed with power to make the sale of a portion of said property in liquidation of indebtedness, and that defend-ant Powers was entitled to have delivered to him a deed to the portion purchased by him, upon completing his payments. The court ascertained the amount of dis-bursements made by the grantees in said warranty deed, and the receipts received by them from the rentals of

said property and adjusted the financial obligations of all of the parties.

The grantees in the said warranty deed alone have appealed, and their only complaint here is that the court erred, upon the testimony adduced, in declaring such deed a mortgage. Other pertinent facts will be noted in· the course of the opinion.

I.  It is no longer a question in this State but that if in a proceeding under Section 1970, Revised Statutes 1919, the issues tendered by the pleadings are equitable in their nature and call for equitable relief, the case is one in equity and the cause is triable before the chancellor. [Lee v. Conran, 213 Mo. 404, 111 S. W. 1151; Minor v. Burton, 228 Mo. 558, l. c. 563; Toler v. Edwards, 249 Mo.· 152, 155 S. W. 26; Hauser v. Murray, 256 Mo. 58, l. c. 84, 165 S. W. 376; St. Louis Union Trust Co. v. Hill, 283 Mo. 278, 223 S. W. 434; Barron v. Wright-Dalton-Bell-Anchor Store Co., 292 Mo. 195.]

*Equity Suit.*

II.  And it is equally well settled that where a court of chancery acquires jurisdiction of a cause, within the limits of the pleadings it will give full and complete relief. [Powell v. Crow, 204 Mo. 481, 102 S. W. 1024; Buckner v. Midland Farm & Land Co., 190 S. W. (Mo. App.) 419; Frazier v. Crook, 204 S. W. (Mo.) 392.]

*Complete Relief.*

III.  A deed absolute on its face may be a mortgage (27 Cyc. 991; Chance v. Jennings, 159 Mo. 554; Book v. Beasly, 138 Mo. 455; Hach v. Hill, 106 Mo. 18; Carson v. Lee, 281 Mo. 166), but whether said deed is intended as an absolute conveyance or a mortgage must be determined from the intentions of the parties at the time of the transaction (Carson v. Lee, supra, l. c. 178); and if made to be a mortgage or an absolute conveyance it retains the character intended at the time of its inception and the rights of the par-

*Intention.*

ties are determined accordingly. [Phillips v. Jackson, 240 Mo. 310, l. c. 332.]

In the latter case it was said: "The character of the transaction is determined in its inception. If it was a mortgage in the beginning, it remained so."

IV. We may add the further premise to the effect that the intention of the parties must be sought in the circumstances surrounding the transaction, and in this connection it is proper to inquire into the *relative situation of the parties at the time, their preceding* Proof.  *negotiations, and generally all pertinent facts having a tendency to fix and determine the real nature of their design and understanding.* [27 Cyc. 1006; Powell v. Crow, supra, l. c. 487.] And moreover, if there should arise a doubt as to whether said deed was intended as a mortgage or a conditional sale, then such doubt shall be resolved in favor of a mortgage. [Powell v. Crow, supra; Carson v. Lee, supra; Phillips v. Jackson, supra; 27 Cyc. 1006-7.]

With the foregoing postulates to guide us we may consider whether the testimony in this case was sufficient to warrant the inference that the parties intended the warranty deed in question to be a mortgage. It is not controverted on this record that at the inception of the negotiations it was the intention of all of the parties that the grantees in said deed, as neighbors and friends of the respondents, would aid them in preventing a foreclosure sale of their farm. It is freely admitted in the record that said grantees, with others, attempted to organize the neighbors and friends of respondents to engage in the common enterprise, without profit to them, to help respondents in their straitened financial circumstances and preserve for them their farm, or at least a sufficient portion thereof to constitute a home.

The defendants, who were grantees in said deed at that time, negotiated on behalf of respondents, as lenders, and respondents were borrowers, and while the burden of proof is upon the party who alleges that an ab-

solute deed is a mortgage and that the proof must be clear, cogent, unequivocal and convincing (Jones v. Rush, 156 Mo. 364, l. c. 376; Burke v. Murphy, 275 Mo. 397, l. c. 408; Rinkel v. Lubke, 246 Mo. 377, l. c. 387), "yet when the transaction had its inception in an application for a loan, the courts are inclined to scrutinize it closely and to hold it a mortgage, unless it clearly appears that the parties changed their minds afterwards." [Cobb v. Day, 106 Mo. 278, l. c. 296; Smith v. Becker, 192 Mo. App. 597, l. c. 602, 603.]

In this case, admittedly all the negotiations pointed to an arrangement whereby the relationship of lender and borrower would be established between the defendants and respondents, and the appellants claim that this plan was changed about the time the deed was executed, because they were unable to enlist a sufficient number of friends and neighbors "to get behind" respondents. The evidence on the part of the respondents was clear, cogent, unequivocal and convincing that the deed in question was intended by the parties as a mortgage, as each and every one of their witnesses gave such details as to evince a clear purpose on the part of appellants to sustain respondents in their financial difficulties and not to take advantage of them. It appeared that respondents were not only in default in the payment of interest and principal of the $14,000 note secured by the second deed of trust on their property, but that they were also in default on their interest payments on the first deed of trust, and that there were other pressing obligations. When it was arranged that the appellants would undertake to prevent the sale of respondents' property, appellants insisted that they would not engage in such enterprise, as lenders or "backers," upon a basis of more than $70 per acre, and to the end that that figure might not be exceeded they required respondent, William J. Williamson, to execute in their favor a bill of sale covering certain of his personal property to the value of $4500. They disposed of this property and applied the proceeds

upon interest in default and reduced the indebtedness so that it equalled only $70 per acre on the entire premises and then they exacted of respondents the payment of interest on the indebtedness until the first day of March, 1918, thus requiring respondent Williamson to pay interest on an indebtedness which they claimed was liquidated by their assuming same in consideration of the deed made to them on January 14, 1918. They said in their testimony, and they were corroborated in this by the attorney who supervised the transaction, that respondent agreed to accept their assumption of his indebtedness as a full consideration for the purchase of his farm. As stated, this was denied by respondents and their witnesses and all the facts tend to sustain the theory of respondents.

Moreover, one of the prime tests in a case of this kind is whether the relation of debtor and creditor continues. If so, it is a mortgage. [Slowey v. McMurray, 27 Mo. 113.] The appellants, after having paid the $14,000 notes, retained said notes and they treated the notes secured by chattel mortgage in the same way. They never treated the debt as discharged. It was their duty to discharge these obligations and surrender the notes to respondents as a part of the purchase price, if said deed were to be regarded as an absolute conveyance. [27 Cyc. 1010.]

V. While it is the duty of the Supreme Court to weigh the evidence and reach its own conclusions, yet the court may defer to the findings of the chancellor who heard the cause. [McKinney v. Hawkins, 215 S. W. 250.] And particularly is this true if we conclude that the substantial weight of the evidence sustains his findings. [Daudt v. Steirt, 205 S. W. 222, l. c. 225.]

Deference to Chancellor.

The findings of the learned chancellor who tried this cause are correct and we will not interfere with the same. The judgment is accordingly affirmed and it is so ordered. *Railey, C.,* concurs; *White, C.,* not sitting.

PER CURIAM:—The foregoing opinion by REEVES, C., is adopted as the opinion of the court. All of the judges concur.