Smith v. McCorkle.

SMITH, *Appellant*, v. McCORKLE.

DIVISION TWO.

1.  **Land : TORTIOUS POSSESSION : TRESPASS.**  One taking possession of land without legal or equitable right thereto is simply a trespasser.

2.  ———— : ———— : **EQUITABLE TITLE.**  While the tortious possession so taken if continued a sufficient length of time may, under certain circumstances, ripen into a legal title which may be successfully asserted against the true owner, yet an equitable title cannot be derived from a wrongful act, because of the long continuance of the wrong.

3.  ———— : **LIMITATION : LEGAL TITLE DERIVED FROM UNITED STATES.**  The statute of limitations will not run in favor of one in possession of real estate so long as the legal title remains in the United States.

4.  ———— : **COTERMINOUS PROPRIETORS : AGREEMENT AS TO BOUNDARY LINE.**  An agreement as to a boundary line between coterminous proprietors does not have the effect of a conveyance of portions of the land between them, but merely of determining the boundaries to the land already owned by them respectively.

5.  ———— : ———— : ————.  An oral agreement as to a boundary line accompanied by possession and improvement is founded upon a good consideration and is not contrary to the statute of frauds, and will bind the parties and their privies.

6.  ———— : ———— : ————.  A conveyance by the parties bound by the agreement and their privies by the same description as that under which they obtained title and held possession will pass the title according to the agreed boundary.

7.  ———— : ———— : **RATIFICATION.**  An agreement as to a boundary line may be ratified by the acts and conduct of the parties.

*Appeal from St. Louis City Circuit Court.* — HON. GEO. W. LUBKE, Judge.

AFFIRMED.

*Henry H. Denison* for appellant.

(1) The recitals and descriptions in the deeds govern the boundaries and location. *Gillespie v. Sawyer,* 15 Neb. 536; *McAfferty v. Conover's Lessee,* 7 Ohio St. 104; *Piercy v. Crandall,* 34 Cal. 343; *Jackson v. Wendall,* 5 Wend. 146; *Jackson v. Sprague,* 1 Payne, 494; *Powell v. Clark,* 5 Mass. 355; *Jackson v. Barringer,* 15 Johns. 471; *Mills v. Miller,* 4 Neb. 444. (2) The possession of one tenant in common is the possession of all. 1 Washb. Real Prop., p. 689. (3) Instructions not based upon the evidence are erroneous. (4) The statute of limitation could not run against Jules C. Kingsbury until the legal title emanated from the United States, which was by the act of congress of June 6, 1874. *McElhinney v. Ficke,* 61 Mo. 329; *Smith v. Madison,* 67 Mo. 705; *Miller v. Dunn,* 62 Mo. 216; *Gibson v. Chouteau,* 13 Wall. 92.

*Hitchcock, Madill & Finkelnburg* for respondent.

(1) Plaintiff's claim is founded on a mere possessory title at best. And, in view of the fact that the legal title did not emanate from the government until June 6, 1874; that this suit was brought May 13, 1884; and that this defendant has been in possession since December 9, 1881, plaintiff's claim cannot be sustained. *Hammond v. Johnston,* 93 Mo. 199, 222. (2) If any one claimed adversely to those in actual possession of this land when the title emanated from the government, he was obliged to bring suit within one year thereafter or his claim was barred. R. S. 1889, sec. 6771. (3) The conveyance from Jules Kingsbury to Thomas Kingsbury, dated April 12, 1858, included the strip of land here in controversy. In construing the meaning of conveyances the court will regard the acts of the parties thereunder and the practical construction given to such conveyances by the parties in interest. *Evans v.*

*Greene*, 21 Mo. 170, 185, 195. This is especially so where, as in this case, there are no conveyances by measurements and distances, or by fixed monuments, but merely by reference to the names of adjoining proprietors. ( 4 ) The compromise deeds between Kingsbury and Prouhet, dated September 10, 1849, and between Prouhet and Forsyth, dated October 12, 1850, fixing boundary lines, in connection with the fact that the occupancy has ever since been maintained in accordance therewith, created an equitable title in them and their representatives to the surplus ground which was absorbed thereby. *Jacobs v. Moseley*, 91 Mo. 457, 462. ( 5 ) The compromise deed between Prouhet and Kingsbury of September 10, 1849, is not subject to the objections urged against it by appellant: *First*, Because even if Prouhet was only a tenant for life with remainder to his children, his children afterwards expressly ratified and affirmed it by their agreement with Forsyth of October 12, 1850. *Second*. Because a compromise agreement settling boundary lines needs no independent consideration. The differences theretofore existing and which are referred to in the agreement and the amicable adjustment thereof constitute a sufficient consideration in themselves. Besides this it appears from the evidence of surveyor Pitzman that the compromise as agreed upon allotted a portion of the aggregate surplus to Prouhet as well as to Kingsbury, and that each released to the other.

MACFARLANE, J.—The suit is ejectment for an undivided one-third of a strip of land in the city of St. Louis, having a front of one hundred and thirty-one feet along the eastern line of United States survey 378, which line is now Union avenue, and running back westerly about four thousand feet. It is unnecessary to give the exact description. The beginning point is given as five thousand and fifty-three feet, one and one-half inches south of the northern boundary of said

survey 378, thence running south with the eastern line of said survey one hundred and thirty-one feet, thence west, etc.

The title originated in a Spanish concession to Marie Louise Chouteau Papin dated in 1796. This concession was for forty arpents north and south, by eighty arpents east and west, and was in 1807 divided by the grantee into thirteen lots running east and west, numbered from the north, the first ten lots being two and one-half arpents wide and eighty long, east and west, and lot 11, ten arpents wide, with same length as the others. In June, 1810, the concession was confirmed by the board under act of congress, and called United States survey 378.

In 1849, by a series of regular conveyances, James W. Kingsbury had become the equitable owner of lots 9 and 10; Stanislaus Prouhet the north fourth of lot 11, and Robert Forsyth the next adjoining fourth of lot 11.

About this time it was learned that there was a surplus frontage to survey 378, and disputes arose among the owners of the lots as to the true boundary line. On the tenth of September, 1849, by agreement, the boundary between lots 10 and 11 was settled by Kingsbury and Prouhet. Previous to this settlement Prouhet and wife had conveyed the lot owned by them to their children reserving a life interest in themselves and the survivor. Prouhet died soon after making the agreement with Kingsbury. In 1850 the three children of Prouhet and Forsyth, by agreement, established the line between their tracts. This agreement referred to the previous agreed boundary between their father and Kingsbury as the basis from which measurements were to be made. These agreements were both in writing and were recorded. Monuments were fixed marking these division lines, fences were adjusted and possession taken in accordance with the agreement.

The Prouhet children by separate deeds conveyed their tract to Forsyth, who on April 7, 1853, conveyed

the north half of the east end of this tract to James W. Kingsbury who took possession. The south line of the possession taken was a line equidistant between the two lines established by the two agreements. The land in dispute is one hundred and thirty-one feet immediately north of the line of the possession taken by Kingsbury.

James W. Kingsbury died in June, 1853, leaving a will by which he provided with reference to this tract in survey, numbered 378, as follows: "This tract of land I do not wish to go to my children, nor be divided between them until the end of twenty years from my death;" and again it says: "At the end of the said term of twenty years the whole of said tract of land, including the farm and homestead, to go to my said children and their heirs, in absolute property under the first article of this will." The will provides that, in the meantime, the executors are to rent or lease the land for the support of the children. James W. Kingsbury left three children, viz.: Virginia married Degiverville; Adele Louise married Waterman; Jules C. Kingsbury, who died unmarried May 20, 1867.

April 12, 1858, Jules C. Kingsbury, by a warranty deed, conveyed to his uncle, Thomas H. C. Kingsbury, an undivided third interest in various pieces of property which he had acquired from his father. Among the tracts described in this deed is the north half of the east end of the Prouhet tract, in survey 378, and which had been acquired by his father as above stated. It is described in the deed as follows: "A certain tract of land in survey number 378, formerly the property of Marie Louise Chouteau Papin, containing sixty-seven acres, more or less, and bounded as follows: north by land of Kingsbury, south by land of Forsyth, and east by land of Cabanne, and west by land of Theodore Prouhet; this land being * * * the same tract conveyed to James W. Kingsbury by Robert Forsyth and wife, by deed, dated April 7, 1853."

None of the conveyances made after the boundary lines were agreed upon, referred to the agreements, but the possession was taken and held according to them. The deeds simply referred to the land as that purchased from their grantors, giving date of deeds and book and page of their record, and named the owners of the land by which the land conveyed was bounded. Defendant claims title under the deed from Jules C. Kingsbury. Her title and possession dating from December 9, 1881.

Jules C. Kingsbury died insolvent in May, 1867. Letters of administration were granted on his estate in 1883. A claim held by plaintiff was allowed, and the tract of land sold by the administrator, under whose deed plaintiff claims.

The legal title to survey 378, emanated from the government by act of congress June 6, 1874. The actual possession of this land was held by the executors of James W. Kingsbury from his death, in 1853, for twenty years, under the provisions of the will. After which it was held by defendant and her grantors. The land held by James W. Kingsbury at his death was one hundred and thirty-one feet in excess of the quantity as described in the division of the survey into lots by the original owner, this being a part of the surplus of the whole tract acquired by the agreements establishing the boundaries.

We understand plaintiff's claim of title to be that when James W. Kingsbury took possession under the deed from Forsyth he fixed his southern boundary one hundred and thirty-one feet further south than his title extended under the original survey, and quantity, as given in the original division of the survey into lots, and his chain of title thereunder; that Kingsbury, his executors and devisees held only the naked possession of the one hundred and thirty-one feet from 1853; that the rights secured to Jules C. Kingsbury by such possession did not pass under his deed made in 1867; that

when the title emanated from the government in 1874, such title to an undivided one-third vested by inurement in him by virtue of such previous adverse possession, and which title plaintiff acquired under his administrator's deed.

The fallacy of the position taken by plaintiff consists in the assumption that the statute of limitations will run for any purpose, in favor of one in possession of land without equitable right, while the legal title remains in the government. The act of congress approved June 6, 1874, through which the legal title passed from the United States "granted, released and relinquished by the United States in fee simple to the respective owners of the equitable title thereto, and to their respective heirs and assignees forever." Laws of 43d Congress, page 63.

One taking possession of land, without legal or equitable right thereto, is simply a trespasser. His tortious possession thus taken, if continued a sufficient length of time, may, under certain circumstances, ripen into a legal title, which may be successfully asserted against the true owner, but the conception that an equitable right could ever be developed out of a wrongful act, because of the long continuance of the wrong, is repugnant to every principle of equity.

It has long since been settled in this state that the statutes of limitation will not run in favor of one in possession of real estate so long as the legal title remains in the government. In speaking of the scope of the decisions on this subject in the recent case of *Hammond v. Johnson*, 93 Mo. 221, BLACK, J., says: "From the instructions given and refused, it appears the circuit court held that the statute of limitation began to run against the plaintiffs before the date of the patent, before the legal title emanated from the United States. This is in accord with the ruling of the court of appeals in *Hammond v. Coleman*, 4 Mo. App. 307, where, it is in substance held that when the grant from the government

is to one, or his legal representatives, we may have recourse to the statute of limitations in determining who that representative is. This court has heretofore given, and still gives, to the case of *Gibson v. Chouteau*, 13 Wall. 92, a much broader scope. *McIlhinney v. Ficke*, 61 Mo. 329; *Miller v. Dunn*, 62 Mo. 216. As to the government there is no statute of limitations, and in the *Gibson case*, it is held that the statute leaves the right of entry upon the legal title, subsequently acquired by the patent, wholly unaffected by adverse possession; that such possession, either by the plaintiffs or defendants, will not control the legal title. This being so we do not see how the statute can operate as a transfer of the equitable right."

We think the decision in that case decisive of this one. There seems to us no merit in the contention of plaintiff that Jules C. Kingsbury became the equitable owner of the land in dispute, or the heir or assign of the equitable owner by reason of his possession before the legal title passed from the United States.

II. Plaintiff, also, we think, misapprehends the effect of an agreement establishing between coterminous proprietors a disputed boundary. "The object (of such agreement) is not to pass the estate, or make a conveyance and transfer to one person the lands which belong to another; but such agreements proceed upon the fact that the true line of separation is not only fairly and truly in dispute, but that it is also, to some extent, undefined and unknown. They recognize and confirm the title of both the contracting parties to the land of which they are respectively the real owners, and seek only to distinguish and place beyond the reach of future doubt the true line of separation between them." Tyler on Boundaries, 254. They are not considered as extending to the title, nor do they have the operation of a conveyance, so as to pass the title from one to the other.

A verbal agreement, accompanied by possession and improvement, is founded upon good consideration, is not

contrary to the statutes of fraud, and will bind the parties and their privies. *Taylor v. Zepp*, 14 Mo. 488; *Blair v. Smith*, 16 Mo. 273 ; *Jacobs v. Moseley*, 91 Mo. 457. The agreements between these parties then did not have the effect of conveying from one to another any portion of the land, but merely of determining the boundaries to the land already owned by them respectively. It follows that conveyances by the parties bound by the agreements and their privies, giving the same description as that under which they obtained title, and held the possession, would pass the title according to the agreed boundaries. *Kincaid v Dormey*, 47 Mo. 338.

We think the reference to the Prouhet children in their agreement with Forsyth, to the line agreed upon by their father, and their subsequent conduct in maintaining the line so agreed upon, a sufficient ratification of the bounderings established between their land and that of James W. Kingsbury.

Our conclusion is that the conveyances from the Prouhet heirs to Forsyth and from Forsyth to James W. Kingsbury vested in the latter the north half of the Prouhet tract according to the agreed boundaries, and included therein the one hundred and thirty-feet in controversy ; and that Jules C. Kingsbury by his deed conveyed the same land to Thomas Kingsbury. In no view of the case do we think plaintiff shows a right to the possession of the land. Judgment affirmed ; all concur.