OF THE

## STATE OF MISSOURI

AT THE

OCTOBER TERM, 1912.

*(Continued from Volume 245)*

LEANDER J. MARSHALL et al., Appellants, v. NORMAN N. HILL, JR., et al.

In Banc, November 26, 1912.

1. **PETITION FOR REVIEW: Requisites: Treated as Answer.** A petition filed by parties against whom, as defendants, final judgment has been entered under Sec. 650, R. S. 1899, which petition alleges in detail the existence of the facts set forth in Sec. 777, R. S. 1899, that the petition upon which the judgment complained of was obtained is untrue in some material matter, and that the defendants have and then had a good defense thereto, setting forth such defense and closing with the requisite prayer for the setting aside of the judgment and with a verification, will be taken as a petition for review under Secs. 777, 780, R. S. 1899, despite the fact that it makes an additional party and transfers one party to the opposite side, and, having been treated below as an answer, under Sec. 780, R. S. 1899, it will be so treated by the Supreme Court.

2. **PATENTS TO LAND: Erroneous Description: Corrected by Government: Intermediate Conveyance: Patentee a Trustee.** Where a patent from the government errs in its description of

246 Mo.]                    (1)

Marshall v. Hill.

the land granted, and the patentee conveys the land by warranty deed with the same error, said patentee, upon subsequently obtaining another patent expressed by its terms to be "issued in lieu" of the earlier one "in which the description of the land was erroneous," holds the legal title in trust for his grantee.

3. ———: ———: ———: **Limitations.** One who obtained in 1872 a patent from the government which wrongly described the lands attempted to be granted, can gain no title by the Statute of Limitations as against other claimants to the land until and after the date of issuance of a corrected patent. Until that time the legal title remains in the government and as to it there is no limitation.

4. ———: ———: ———: **Laches.** The Statutes of Limitations establish the only limitation, founded upon time alone, of the right to bring an action at law or a suit in equity. Time is, however, an important element in the defense of laches, a creation of equity designed to meet those cases in which the duty to move promptly in the assertion of a right arises out of the corresponding right of the adverse party to be protected from some injury that would result from delay.

5. ———: ———: ———: ———: **Facts of Case.** In 1872 defendant Hill applied for a patent to certain lands and obtained one which incorrectly described them. In 1874 he made and delivered a warranty deed to L. J. Marshall containing the same description as that in the patent. L. J. Marshall deeded the land to his mother. In the eighties lead mines began to be opened near the land in question and in 1889 Hill began to pay taxes and cut wood on the land attempted to be patented by him. In 1890 he took a quitclaim deed from a brother of L. J. Marshall to the land by a proper description, and in 1898 he procured from the government a corrected patent. In 1905 he brought suit under Sec. 650, R. S. 1899, to quiet title, obtained service by publication against the heirs of L. J. Marshall, who were all nonresidents, and had judgment. In 1906 the defendants in that suit instituted this suit by filing a petition for review, to set aside Hill's judgment, and to decree the title in them. Hill asserts that the plaintiffs are barred by laches. *Held,* that, under the circumstances of this case, Hill having, after the discovery of the valuable nature of the land, assumed a hostile attitude, the suit of plaintiff is not barred by laches.

6. **DEED: Not to be Avoided by Maker Because of Carelessness in Making.** A person will not be permitted to overthrow his own solemn deed, which he made thirty-two years before, and for which he received a cash consideration, by a statement showing nothing more than carelessness in the making thereof.

7. **NOTICE: Actual: Of Outstanding Equities.** One who has actual notice of an equitable claim affecting the legal title to land he is about to purchase, completes the transaction and pays the purchase price at his own risk. He has actual notice when he knows of the existence of the adverse claim of title, or is conscious of having the means of knowledge, though he may not use them.

Appeal from St. Francois Circuit Court.—*Hon. Charles A. Killian,* Judge.

REVERSED AND REMANDED (*with directions*).

*H. J. Cantwell, Warren D. Isenberg* and *A. C. Ketring* for appellants.

(1) The petition in this cause alleges fraud, the evidence conclusively establishes fraud in the procuring of the judgment and in all of the acts of Hill prior thereto. A court of equity would have had and still has power to set aside a decree obtained under the circumstances herein, and we are strictly within the terms of the statute, having brought our petition for review within three years and defendants herein are not and cannot be prejudiced by reason that we assume the laboring oar and set up all of the facts in order to avoid a multiplicity of suits. Miles v. Jones, 28 Mo. 87; Baldwin v. Dalton, 168 Mo. 25; Irvine v. Leigh, 102 Mo. 200; Sec. 777, R. S. 1899. (2) The patent inured to the benefit of Hill's grantee, i. e., Leander J. Marshall and his successors in interest. As soon as patent was issued a resulting trust arose in their favor. Newkirk v. Marshall, 10 Pac. 571; Stoddard v. Chambers, 2 How. (U. S.) 318; Stephenson v. Smith, 7 Mo. 618; Hunsucker v. Clark, 12 Mo. 334; Groves' Heirs v. Fulsome, 16 Mo. 543; Davis v. Filer, 40 Mich. 310; Sensenderfer v. Kemp, 83 Mo. 581; Widdicombe v. Childers, 84 Mo. 382; Johnson v. Flutsch, 176 Mo. 452; Hedrick v. Beeler, 110 Mo. 91; James v. Groff, 157 Mo. 421; Damschroeder v. Thias,

51 Mo. 100. (3) The deed from Hill to Leander J. Marshall, although acknowledged before a justice of the peace in Ohio, has been recorded thirty years, and the record was competent evidence of its execution and all it contained. Testimony of Hill is not sufficient to overcome the proof of his deed. Eclivie v. Sheppard, 179 Mo. 382; Secs. 6314 and 6318, R. S. 1909; Secs. 3119 and 3123, R. S. 1899; Brown v. Oldham, 123 Mo. 621; Wells v. Presey, 105 Mo. 165. (4) Limitation did not run until legal title to the southeast quarter of the southeast quarter emanated from the United States. Gibson v. Chouteau, 13 Wall. 92. Even though Hill had taken actual possession of this land (which he did not) at the time of the issuance of the patent to the southeast quarter of the southeast quarter, the Marshalls would not now be barred to maintain an action against him,—ten years not having elapsed. Mere delay will not prevent recovery in equity. The statute does not begin to run against an action to enforce a resulting trust growing out of an entry of public lands before the patent is issued, and then only when defendant is in possession. Buren v. Buren, 79 Mo. 538. The statute will not run in favor of one in possession of real estate so long as the legal title remains in the United States. Smith v. McCorkle, 105 Mo. 135; Cummings v. Powell, 97 Mo. 524. Even this is true though ejectment might have been maintained, and no ejectment was possible because Hill did not occupy it. Smith v. Madison, 67 Mo. 694; Hammond v. Johnson, 93 Mo. 198; Cooper v. Deal, 114 Mo. 527. (5) To constitute a person a bona-fide purchaser for value without notice, the purchase money must be paid before notice is received. Arnholt v. Hartwig, 73 Mo. 485. This plea is an affirmative allegation in any event and must be affirmatively proved. Young v. Schofield, 132 Mo. 650. The Doe Run Lead Company had an actual and constructive notice and is not a bona-fide purchaser for value without notice. Meyer

v. Bloom, 80 Mo. 179; Insurance Co. v. Smith, 117 Mo. 261; Hedrick v. Railroad, 120 Mo. 516; Widdicombe v. Childer, 84 Mo. 382; Gibson v. Lair, 37 Mo. 188.

*William Henry White* for respondents.

This is an equity cause. In order that appellants may have appellees' title as prayed, it is necessary, in effect, that there be a specific performance of the supposed agreement between Hill and Leander J. Marshall made in 1874—thirty-nine years before the petition was filed—then that the deed of that ancient date be reformed as well as the one to Mrs. Marshall one year later and also the patent. It is also necessary, in effect, to cancel the Doe Run Lead Company's option under which it in good faith took the usual long mining chances and expended more than $3000 and found lead, which gives the land its first real value to its owner or to the community. (1) Laches. Petition was demurrable. The facts are shown upon the face of the petition—that for eight years appellants were apprised of every fact. Burgess v. Railroad, 99 Mo. 496; Moreman v. Talbott, 55 Mo. 392. Even where the delay is not explained satisfactorily, demurrer lies. Bliss v. Pritchard, 67 Mo. 181; McQuiddy v. Ware, 20 Wall. 19; Marsh v. Whitmore, 21 Wall. 184; Badger v. Badger, 2 Wall. 94; Murphy v. De France, 105 Mo. 53; Wendover v. Baker, 121 Mo. 273. Defense is pleaded, specially. Bliss v. Pritchard, 67 Mo. 181. Within statutory period. Note the short periods in the following cases. This is a tract of worthless land suddenly become valuable by Hill's industry and intelligent management and attention and the Doe Run Lead Company's money. The statutory period had more than elapsed and by analogy appellants are barred. Kline v. Vogel, 90 Mo. 239; Burgess v. Railroad, 99 Mo. 496; Banks v. Burnham, 61 Mo. 76; Lan-

drum v. Bank, 63 Mo. 48; Burdett v. May, 100 Mo. 13; Kroenung v. Goehri, 112 Mo. 641; Parker v. Vanhoozer, 142 Mo. 621; Patterson v. Hewitt, 195 U. S. 309; Hatcher v. Hatcher, 139 Mo. 626. Repudiation. Prompt action is required after notice of repudiation. Four years is too long—even two years. Appellants had the best of all notice on July 21, 1896, of Hill's claim to this very land and of all the grounds of his claim. Their petition was filed more than ten years later, on December 11, 1906. Banks v. Burnham, 61 Mo. 76; Patterson v. Hewitt, 195 U. S. 309. Increased value. The land was worthless when entered in 1874. It had only a speculative value until lead was discovered under the option from Hill after the second decree. Appellants contributed nothing, not even taxes; defendants everything and took chances which gave it its real value to the public and the defendants. Moreman v. Talbott, 55 Mo. 392; Pomeroy v. Fullerton, 131 Mo. 581; 16 Cyc. 161, note 6; Ib. 162, note 7; Hatcher v. Hatcher, 139 Mo. 626. Two years' delay was held fatal in one case. Reel v. Ewing, 71 Mo. 17. Thirty-two years' delay. The petition was filed December 11, 1906. The first deed sought to be reformed is dated in 1874—thirty-two years before; the second in 1875—thirty-one years before. No case can be found in the books where such delay has been excused. Fifteen years' delay unexplained is fatal, even in case of fraud and where the deed was procured from one insane. Norris v. Haggin, 136 U. S. 386. As between trustee and *cestui que trust,* twenty years is too long. Hammond v. Hopkins, 143 U. S. 224. (2) Specific Performance. Based, as the petition is, upon Hill's alleged thirty-two year old contract with Leander J. Marshall to convey the whole interest in this land to him which it is now sought to specifically enforce, the following elementary principles are called to the attention of the court: In discretion of court. 4 Pattison's Digest, p. 3303. Never granted where in-

equitable. 4 Pattison's Digest, p. 3303, No. 12; Mc-Elroy v. Maxwell, 101 Mo. 294; 16 Cyc. 162, note 7. Estoppel, permitting another to improve. Allen v. Mansfield, 108 Mo. 343. Character of proof, see "Mistake." (3) Mistake. Proof. The proof must be clear and convincing; mere preponderance of evidence is not sufficient; it must be free from reasonable doubt; a mistake on both sides and sufficient to establish a trust. 3 Pattison's Digest, p. 2388, No. 133; Same, Vol. 4, p. 3313, No. 191; Maddrell v. Riddle, 8 Mo. 31; Allen v. Carter, 8 Mo. App. 585; Tesson v. Insurance Co., 40 Mo. 33; Dickson v. Railroad, 168 Mo. 90; Clark v. Railroad, 127 Mo. 255. Correction. The correction must make the instrument over to conform to the real contract. The court cannot make a contract for the parties. Downing v. McHugh, 3 Mo. App. 594; Sweet v. Owens, 109 Mo. 1; Parker v. Vanhoozer, 142 Mo. 352; Shrayer v. Nickell, 55 Mo. 264; Miller v. Railroad, 162 Mo. 424. Mistake on one side is ground for rescission, not for reformation. 24 Am. & Eng. Ency. Law (2 Ed.), p. 618, note b. Correcting description. This is under same rule as further assurance. Hausmann v. Adams, 65 Mo. App. 273. (4) Limitations. Thirty-year statute. Equitable title passed from United States, May 6, 1872, more than ten years. Hill was in possession cutting wood from June 1, 1895, to March 12, 1896; he made a survey in the spring of 1903 and the corner stones are still standing; he recorded the subdivision, 1903; the assessment for taxes was as "Rose Hill" and by lots and blocks to date, more than one year before suit was filed in 1906. He has paid all taxes assessed since entry in 1872. The Marshalls have never been in possession and have not paid taxes for thirty years; have never paid any. Collins v. Pease, 146 Mo. 135; Shumate v. Snyder, 140 Mo. 84; Pharis v. Bayless, 122 Mo. 116; Fairbanks v. Long, 91 Mo. 628; Rollins v. Mc-

Intire, 87 Mo. 496; Mansfield v. Pollock, 74 Mo. 185; DeHatre v. Edmonds, 200 Mo. 275.

BROWN, C.—In February, 1905, the defendant Norman N. Hill filed his petition in the St. Francois Circuit Court returnable at the next May term thereof, in words and figures as follows:

"Norman N. Hill, plaintiff, v. Charles R. Marshall; Leander J. Marshall, John Marshall and the unknown heirs, grantees and devisees of John Marshall; Della Lashley, the unknown heirs, grantees and devisees of Austin Marshall, deceased; the unknown heirs, grantees and devisees of Stanhope Marshall, deceased; the unknown heirs, grantees and devisees of James Marshall, deceased; Adeline Boggs and the unknown heirs, grantees and devisees of Adeline Boggs; and the unknown heirs, grantees and devisees of Sarah Marshall, deceased, defendants.

"Plaintiff states that he claims to own and does own, in fee simple, the following described lands situate in the county of St. Francois in the State of Missouri, to-wit:

"All of the southeast quarter of the southeast quarter of section 1, township thirty-six north, range four east, containing about forty acres.

"He further states that he is informed and believes that the above named defendants claimed to have and own an interest in said lands.

"Plaintiff further states that defendants are non-residents of the State of Missouri and cannot be served with process in said State in the manner prescribed in article four, chapter eight, Revised Statutes of Missouri 1899.

"Plaintiff states that he verily believes there are persons as hereinafter set forth, who are interested in, or who claim to be interested in, the subject-matter of this petition, as heirs, grantees and devisees of

the parties named in this petition and whose names he cannot insert because unknown to him.

"He further states that Adeline Boggs, formerly Adeline Marshall, and John Marshall, are children and heirs of Sarah Marshall, deceased, aforesaid; that he has no definite knowledge as to whether the aforesaid Adeline Boggs and John Marshall are still living, and hence their unknown heirs, grantees and devisees are made parties to this action.

"He further states that James Marshall, deceased, Austin Marshall, deceased, and Stanhope Marshall, deceased, are also children and heirs of the aforesaid Sarah Marshall who died more than twenty years ago; that the said unknown heirs, grantees and devisees of Sarah Marshall and the unknown heirs, grantees and devisees of Adeline Boggs, John Marshall, James Marshall, Austin Marshall and Stanhope Marshall, claim title to the aforesaid premises, as plaintiff is informed and believes, by and through the aforesaid Sarah Marshall as the common source of title, the exact nature of which claim this petitioner is unable to state.

"Plaintiff therefore prays the court to determine the estate, title and interest in said real estate of the parties herein respectively, and to define by its judgment or decree the title, estate and interest of the parties severally in and to such real estate.

"Norman N. Hill being duly sworn upon his oath states that the matters and things contained in the foregoing petition are true to the best of his knowledge and belief and that he verily believes there are persons, as described in said petition, claiming to own an interest in the lands described in said petition whose names he cannot insert because unknown to him, and their interests are set forth and described so far as his knowledge extends.

"Subscribed and sworn to before me this........ day of February, 1905."

Upon this an order of publication was made and published, returnable on the first day of the May term. None of the defendants appearing at that time, default was taken, and on the 23d day of August, 1905, a final decree was entered, reciting that the plaintiff was the absolute owner in fee of the land described in the petition, that he had been in possession of, exercising acts of ownership over, said lands since the year 1894, and that the defendants nor either of them had any estate, title or interest therein; and adjudging that all title or claim of right of defendants and each of them in and to said lands be vested in Hill, absolutely and in fee simple.

On October 20, 1906, the original petition in this case was filed by Leander J. Marshall, Mrs. W. S. Marshall, Adeline M. Boggs, and Adella M. Lasley, as plaintiffs, against Norman N. Hill, Jr., Charles R. Marshall and Doe Run Lead Company. The defendants were all notified and appeared. Mrs. Boggs conveyed her interest to the plaintiff Leander J. Marshall, and died. Leander J. Marshall also died and the action was revived and continued in the name of his daughter and sole heir, Winifred Marshall Dittmar, and an amended petition was filed in May, 1907. This petition admits the truth of the allegation in the petition of Hill against Marshall that the defendants in that petition claimed to own an interest in the lands, and denies specifically each and all other allegations thereof. It charges that these plaintiffs are the absolute owners of the land in controversy, that the suit was a fraudulent scheme to deprive them of their property, that the statements in the petition by which jurisdiction was attempted to be obtained by publication were false, that the notice by publication is void upon the face of the record, and that the judgment was obtained by false representations and upon false testimony. They set up their own title substantially as follows:

On or about May 6, 1872, Hill entered the land in question at the United States Land Office; that by an error the certificate of entry described it as "the southeast quarter of the *north*east quarter of section 1, township thirty-six north, range four east of the fifth principal meridian; that on August 30, 1872, a patent was issued to Hill in which the same error was made; and that on or about the 19th day of June, 1874, the said Hill sold the land so entered to plaintiff Leander J. Marshall and executed and delivered to him a warranty deed in which the land was erroneously described as the southeast quarter of the *north*east quarter instead of the southeast quarter of the southeast quarter of said section; that at the time of making this conveyance Hill delivered to Leander J. Marshall the original patent above mentioned, and afterwards, on August 31, 1875, Leander J. Marshall for a valuable consideration conveyed the same land by the same erroneous description by warranty deed to Sarah S. Marshall, his mother, from whom plaintiffs deraign their title. That in all these transactions the southeast quarter of the southeast quarter was intended, but by mistake of all the parties it was described as the southeast quarter of the *north*east quarter. That there is no such tract of land as the southeast quarter of the *north*east quarter of said section; that in March, 1898, Hill, who was formerly of Richland county, Ohio, but was then living in Washington, D. C., applied for and obtained from the United States a patent granting to him the said southeast quarter of the southeast quarter of section one, township thirty-six, range four, on the sole ground that he had entered the said land as above stated, and that by mistake the patent therefor had described it erroneously. The said last patent states upon its face that it was made to rectify said mistake. The petition also charges that Hill procured from Charles R. Marshall, one of the heirs of Sarah S. Marshall, a quitclaim deed to the

lands in controversy dated June 23, 1890, which plaintiffs believe was procured by fraud and misrepresentation, and could convey no greater interest than the undivided one-sixth interest owned by the grantor as one of the heirs of Sarah S. Marshall. That all the acts charged in the petition constituted a fraudulent scheme, having for its object the unlawful acquisition by Hill of the land in controversy. Charles R. Marshall is made a defendant in order that his interest may be adjudicated in the suit, and the Doe Run Lead Company to adjudicate their claim on account of an option to purchase the same land from Hill. The petition concludes as follows:

"Wherefore, plaintiffs pray the court to set aside the decree entered in the cause aforesaid; to permit the plaintiffs herein to controvert by proof the allegations of the petition in said cause, and to support the allegations herein, and upon testimony being heard, to declare the title which may have been conveyed by the United States by the patent of March 21, 1898, to Norman N. Hill, Jr., of southeast quarter of southeast quarter of section one, township thirty-six north, range four east, to be vested in the plaintiffs as herein set forth. Plaintiffs' interest herein to be decreed in said lands as herein set out; that is, to Winifred Marshall Dittmar two-fifths; Mrs. W. S. Marshall one-fifth; Adella M. Lasley one-fifth; Charles R. Marshall one-thirtieth; and to Norman N. Hill, Jr., or Charles R. Marshall, as the court may determine, five-thirtieths; and for all other and further equitable relief." Petition was duly sworn to.

Hill answers that Charles R. Marshall repaid him one-half the amount of money he had paid for the land and that he supposed he had conveyed him one-half the land but denies any knowledge of the deed to Leander J. Marshall, although he does not deny its execution. He also pleads adverse possession of the

land for more than ten years prior to the filing of the petition, and the ten-year Statute of Limitations.

The Lead Company sets up its option to purchase from Hill, upon which it has paid one hundred dollars, and expended in prospecting about three thousand dollars more, and asserts its willingness to pay the purchase price, fifteen thousand dollars, as soon as it can get title. It also says it has no knowledge of the truth or falsity of the matter set up in the petition and answer of Hill, except such as it pleads, and such records and facts as the law would charge it with knowledge of.

The answer of Charles R. Marshall set up, among other things, that the quitclaim deed of June 23, 1890, was obtained by Hill through fraud and misrepresentation and asks that it be set aside. To this answer Hill filed a motion to strike out that part referring to, and asking relief on account of, the quitclaim deed, on the ground, among others, that "in this cause Norman N. Hill can set up no title other than that which he set up, or might have set up, in his original petition in this suit, the decree in which is herein sought to be vacated." All the matters pleaded in the several answers were properly put in issue.

The facts relating to the title to the land in controversy are as follows: On May 6, 1872, Norman N. Hill applied at the local United States Land Office at Ironton, Missouri, to enter the southeast quarter of the southeast quarter of section one, township thirty-six north, range four east, in St. Francois county, Missouri. His application is now on file in the local land office and the plat book shows the entry (43,783) by its proper description. The register of cash entries and the tract books of the local office show the entry to cover the S. E. ¼, N. E. ¼ of said section, but the letter "S" appears written in pencil over the "N," changing the description to the S. E. ¼, S. E. ¼. The acreage of the last described tract (41.02) ap-

pears on the records throughout. The certificate was erroneously made out as the southeast quarter of the *north*east quarter, which was covered by the claim of one Joseph Gerrard, Jr., which had been patented to him June 6, 1836. Patent was issued to Hill by the same erroneous description August 30, 1872. Hill conveyed the southeast quarter of the northeast quarter to Leander J. Marshall, June 19, 1874, and the deed was, on May 18, 1875, duly recorded in St. Francois county. Leander J. Marshall conveyed the same land to Sarah S. Marshall, his mother, August 31, 1875, by warranty deed, recorded January 4, 1876. The plaintiffs in this case are the heirs of this grantee, who have acquired her interest by inheritance and transfer between themselves, in the proportions stated in the prayer of the petition.

The Flat River lead district began to develop in the 80's, the first map of it having been made, as disclosed by the record, in 1882. In 1886 and 1887 lands in the vicinity of the tract in question began to sell, and in December, 1889, Mr. Hill, who was then occupying a position in the pension office in Washington, seems to have become aroused, and paid thirty-eight dollars and some cents in taxes which had been assessed against the tract in controversy from 1874 to 1889 inclusive, and has since paid the taxes from year to year, both before and since the emanation of the legal title from the United States, up to the time of the trial. In 1890 the defendant Doe Run Lead Company was working on the Cofman and Hampton lands adjoining, and Judge Taylor was working his land east of it. June 23 of that year Hill sent a lawyer named Sewall of Mansfield, Ohio, who is now dead, to Charles R. Marshall, and procured a quitclaim deed to the same land described in the second patent. This is the deed that is now being attacked by the defendant Marshall as fraudulent. He testifies that it was procured by misrepresentation, while Hill testifies that he obtained

it because Charles R. Marshall had, in 1874, refunded half the cost of the land to him and he had, or supposed he had, for that consideration, conveyed to him an undivided half of the tract described in the patent.

December 17, 1894, Hill wrote to the Commissioner of the General Land Office as follows: "I am the owner of the S. E. ¼ of the S. E. ¼ of Sec. 1, Tp. 36, R. 4 E., in St. Francois County, Missouri. The original patent has been lost. I desire to know what steps are necessary to secure a copy of said patent. The land was entered by me in 1872, I believe about May of that year and I have owned it since that time."

This application proceeded with voluminous correspondence. February 25, 1895, the commissioner called upon Mr. Hill for an affidavit showing loss of the patent issued in case of C. E. 43,783, also conveyance from the United States of the land described in that patent, and an abstract showing that such land was free from all incumbrances, mortgages, assignments and conveyances, to which Hill replied with an affidavit that the patent had been lost and an abstract as follows: "Abstract of title to S. E. ¼ of S. E. ¼, Sec. 1, Tp. 36 N., R. 4 E., United States to Norman N. Hill, entry dated May 6, 1872. S. E. ¼, Sec. 1, Tp. 36 N., R. 4 E., Chas. R. Marshall to Norman N. Hill, quitclaim deed, dated June 23, 1890, filed July 2, 1890. Rec. 39, p. 465."

Further proceedings on this application led to the disclosure of the record of the deed to Leander J. Marshall. To this Mr. Hill answered that the patent of June 6, 1836, under private Land Grant Survey No. 870 to Joseph Gerrard, Jr., had divested the title from the United States, so that the patent of August 13, 1872, was void, from which it followed that the alleged transfer by him to Leander J. Marshall was void, and that it was also void for the reason that it was obtained covertly and by fraud, and was intended to be and believed to be to Charles R. Marshall who after-

ward conveyed to him. May 23, 1896, the department ordered notice to Leander J. Marshall, which was afterward given, and the matter proceeded until it was finally determined by the commissioner of the General Land Office February 7, 1898, in a decision containing the following paragraph: ''It is true that there is no evidence of service of notice on the Marshalls of the motion for review now pending as is required by Rule of Practice 76, but there are no adverse parties before this office. The Marshalls all claim under Hill's entry and the conflict of interest between Hill and the Marshalls this office has no jurisdiction to determine; they may have conflicting interests, but if so, it will be for another tribunal to decide. Nor did the Marshalls come into this case as adverse parties, under Rule 102; they have asked nothing, simply objected to this office correcting its own error, when, so long as the title to the S. E. 1/4, S. E. 1/4 remains in the Government, neither the Marshalls nor Hill can enforce whatever rights they may have.''

Hill testified that he knew nothing of his own conveyance to Leander J. Marshall in 1874, but that he supposed the only conveyance he had executed had been an undivided half to Charles R. Marshall, while Charles R. Marshall testified at the time of the date of this deed he knew Mr. Hill personally and well. He was a justice of the peace in Richland county, Ohio, while Hill lived in Plymouth, Ohio, a part of which was in Richland county and part in Huron county; that his brother Leander J. Marshall made a trade with Hill to purchase the forty acres in controversy, and gave the witness the purchase money to go over to Hill's home and pay him for the land and have the deed executed, which he did. Mr. John Rank, who had gone to Plymouth with him in a buggy, and is now dead, and Mr. Emery, a citizen of Plymouth, witnessed the deed, which was signed by Mr. Hill and his wife,

both of whom went with him across the street into
Richland county and acknowledged it, knowing well
what it contained.

Mr. Hill, besides paying the taxes, exercised va-
rious other acts of ownership over the land in question,
one of them being the sale of wood cut from the land
in 1895 to the value of $170.40.

The petition and cross-petition of Charles R. Mar-
shall were dismissed and costs adjudged in favor of
Hill and the Lead Company and after the overruling
of motions for a new trial and in arrest of judgment,
the case is here by appeal.

I. The first question that confronts us relates to
the effect of the judgment in the proceeding instituted
by Mr. Hill in 1905, against the Marshall heirs, to
quiet his title to the forty acres of land in controversy.
That proceeding was founded upon the provisions of
Sec. 650, R. S. 1899. The only service upon any of the
defendants was by publication in a newspaper. None
of them appeared; so that if this petition is to be given
the effect of a petition for review under Sec. 777, R. S.
1899, the judgment does not stand in the way of the
trial of the issues presented by it.

No statute of our State has been subjected to more
or greater vicissitudes, both legislative and judicial,
than that which relates to the quieting of titles. At
the time of the bringing of the Hill suit, sections 647
and 650 appeared together upon the statute book. The
former had stood substantially the same for many
years. It contained its own provisions for issuing and
serving notice of proceedings under it, and provided,
in substance, that any person in possession of real
property claiming a freehold, or unexpired term of not
less than ten years, might file a petition in the circuit
court setting forth this estate, describing the premises,

and averring that he was credibly informed and believed that the defendant made some claim adverse to such estate, and praying for summons to show cause why such person should not bring an action to try such title; and if so, upon the return, duly executed, of the notice as provided, the defendant should make default, or having appeared, should disobey the lawful order of the court to bring an action to try the title, or having brought it should fail to prosecute it with effect, and the court be of the opinion that such person had no valid right in law or equity, it should enter a judgment that he be forever debarred and estopped from having or claiming any right or title adverse to the petitioner. This section carefully guarded the interests of the defendant; and the bringing and effective prosecution of a suit appropriate to try the title claimed by the plaintiff, against all such parties as should be necessary to a determination of the questions involved, would be a complete return to and compliance with the order and judgment of the court. This was a fair and honest law so far as it went. It answered all the purposes of those visibly and openly in the possession of lands who desired to compel those threatening such possession, to put their words into acts, and measure their rights with the possessor. It gave no countenance to those being out of possession to ripen claims which had never, by any visible act, been brought to the notice of the true owners, by judicial proceedings hidden in the folds of obscure newspapers. Even as to the cases to which it applied, the courts were admonished to take care of the interest of those who might fail to receive such notice as would enable them to take care of themselves by withholding judgment until they should be of the opinion that there was no valid right, either at law or in equity that required protection.

In 1897 the following section, known in the revision of 1899 as 650, was enacted: "Any person claim-

ing any title, estate or interest in real property, whether the same be legal or equitable, certain or contingent, present or in reversion, or remainder, whether in possession or not, may institute an action against any person or persons having or claiming to have any title, estate or interest in such property, whether in possession or not, to ascertain and determine the estate, title and interest of said parties, respectively, in such real estate, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.''

This section alone does not indicate an intention to repeal section 647, in so far as that section authorizes the trying of titles and interests in land by such proceedings and against such parties as should be necessary to a full determination of the questions legitimately involved, nor remove a single safeguard with which it protected an unconscious defendant from the careless or fraudulent use of the drastic remedies it provided. Nor does the repealing section (3), providing that ''all acts and parts of acts inconsistent herewith are hereby repealed'' (Laws 1897, p. 74) indicate any such intention. It has, however, an ''emergency clause'' in the following words: ''This act being remedial in its character and taking the place of statutes which failed in their object, creates an emergency within the meaning of the Constitution; therefore this act shall take effect and be in force from and after its passage.'' [Id., Sec. 5.]

In Meriwether v. Love, 167 Mo. 514, 519, this court, referring to section 5 already quoted, assumed that ''the law-makers unquestionably believed that section 2092 was inconsistent with the Act of 1897, and intended to repeal section 2092, and to provide a more complete and efficient and direct statutory method of determining and quieting land titles.'' In this connection the court said: ''In Huff v. Land Company, 157 Mo. l. c. 69, it was pointed out that the Act of 1897 was ap-

parently enacted in consequence of what was said in the Northcutt case'' (Northcutt v. Eager, 132 Mo. 265) ''about section 2092 not being broad enough to authorize the life tenant to make the remainderman, who claimed under, and not adverse to, the life tenant, bring a suit to try his title.'' This case was followed in Hudson v. Wright, 204 Mo. 412, 423, and in Powell v. Crow, 204 Mo. 481, 486, the act was further construed in an opinion by VALLIANT, P. J., by which it was held that in proceedings brought under it the court was confined to trying the issues and affording the remedies authorized by its terms. The attention of the Legislature does not seem to have been again directed to any fault or imperfection in this law until by the Act of June 1, 1909, it not only enlarged the jurisdiction in such cases, but in express terms gave the parties the right to present to the court for adjudication, such questions, germane to their respective titles, as they see fit. Whether this act was in any way influenced either by the opinion of this court in Powell v. Crow, supra, or in Richards v. Coal & Mining Co., 221 Mo. 149, 173, while of interest as a matter of curiosity, has no bearing upon this case, which had already been tried. The question here is whether the petition of these plaintiffs should be considered from the standpoint of a petition for review under Secs. 777, 780, R. S. 1899. These sections require (1) that it should state the existence of the facts set forth in section 777, (2) that the petition of plaintiff upon which the judgment complained of was obtained is untrue in some material matter, or that the defendant has, and then had, a good defense thereto, setting such defense forth, or both. That it sets out all these matters with the utmost detail, and closes with the prayer for relief prescribed by the statute, namely, the setting aside of the judgment, cannot be denied. These sections require it to be verified and it is verified. True, it makes an additional party, but this is necessary to

a complete defense. Charles R. Marshall is trans-
ferred to the other side, but this, also, was probably
necessary to meet the exigencies of the case. The stat-
ute does not seek to control the arrangement of the
parties. It names the proceeding a "petition for re-
view," a name created by the Legislature to avoid any
combination of words encumbered with a definition
from the common law or equity jurisprudence of the
past. It is highly remedial, and must necessarily ac-
commodate itself to the needs and practice of every
proceeding that comes within its scope.

The act under which the suit which it is sought
to reopen was brought is equally silent upon this mat-
ter of pleading. It only requires that "the institution,
prosecution, trial and determination of suits under
this act shall conform in all respects to the provisions
of the 'Code of Civil Procedure' now existing and
in force in this State concerning actions affecting real
estate." [R. S. 1899, Sec. 651.] Under this we have
held that, although it only permits the person desiring
to take advantage of its provisions to "institute an
action," it may be used as a defense as well. [Sum-
met v. Realty & Brokerage Co., 208 Mo. 501, 506 and
514; Lambert v. Railroad, 212 Mo. 692, 706.] The
remedy is distinctly given, and the code affords the
means to make it applicable in the particular case. So
in this case the plaintiffs have in the form of a "peti-
tion," as the statute requires, presented a complete
defense to the absolute title set up in the pe-
tition of Mr. Hill to quiet his title; they have made
the parties necessary to the trial of the contest to
which they have been invited; they have given the
notice required by Sec. 781, R. S. 1899; and have tried
the issue so presented. Even if section 780 contem-
plates that all these things should be repeated in an
answer, this petition has been treated as an answer
for all the purposes of the proceeding. The arrange-
ment of the parties plaintiff and defendant is of the

same inconsequence in this case as in the Summet and Lambert cases, supra. If under the law and evidence the plaintiffs have made out their title, they have the right to have the judgment decreeing Mr. Hill's title to be good and valid as against them set aside, and to have such relief as they are entitled, in law or equity, to have under their petition and evidence.

II.    The title of Mr. Hill depends upon a patent issued directly to him March 21, 1898, which contains the following statement: *"This patent is issued in lieu of one dated August 30, 1872, in which the description of the land was erroneous, the record of which has been cancelled."* It is not contended that there was any other consideration for its issuance than the money that was paid upon the entry made in 1872, for which the patent was issued purporting to grant the southeast quarter of the northeast quarter of the same section. All the rights that he acquired by virtue of the payment of this money, and of the patent last mentioned, were transferred by him to Leander J. Marshall by the warranty deed dated June 19, 1874, which expressed a consideration of five hundred dollars, and was spread upon the deed records of St. Francois county May 18, 1875. The consideration for the later patent consisted solely of rights belonging to Marshall, so that under the well-settled principles of law applicable to such cases, Hill received and holds the legal title so granted in trust for Marshall, who became, in the manner stated, the equitable owner. [Groves' Heirs v. Fulsome, 16 Mo. 543; James v. Groff, 157 Mo. 402; Davis v. Filer, 40 Mich. 310; Sensenderfer v. Kemp, 83 Mo. 581; Widdicombe v. Childers, 84 Mo. 382.]

The plaintiffs, his representatives in title, are therefore entitled to the relief asked to the extent of their present interests, unless it has been shown that

they have in some way forfeited their right to such relief.

III. Another question preliminary to the consideration of the real merits of the controversy relates to the application of the Statute of Limitations. This proceeding was, for all purposes connected with the application of that statute, begun with the filing of the petition on the 20th day of October, 1906, and there does not seem to be any doubt that during the year 1895, and again in 1896, Mr. Hill was selling timber which was being cut and taken from this land. Whether the acts done on the land in connection with this transaction constituted adverse possession as to these plaintiffs, and if so, whether such possession was continuous up to the time this proceeding was begun, are questions which, in the view we take, are not necessary to be decided. The plaintiffs rest their claim for relief upon the theory that by the issue of the patent of March 21, 1898, the legal title to these lands, then first emanating from the government, inured in equity to them, and that the primary object of this proceeding is to ripen that equity into a legal title; and that the State Statute of Limitations had no bearing upon the rights of the parties until the issuance of the patent which divested the title of the United States. The plaintiffs seem to be right in this contention. There is no difference between the question so stated, and that involved in the decision of the Supreme Court of the United States in Gibson v. Chouteau, 13 Wall. 92, which has been consistently followed by this court. [Smith v. McCorkle, 105 Mo. 135; Cummings v. Powell, 97 Mo. 524; Hammond v. Johnston, 93 Mo. 198; Buren v. Buren, 79 Mo. 538; McIlhinney v. Ficke, 61 Mo. 329.] It is not necessary for us to speculate as to whether or not there may be cases in which the Statute of Limitations will take hold upon the right of possession emanating from the government while it retains the

naked legal title.  We simply say, in the language of this court quoted from Hammond v. Johnston, supra, quoting Smith v. McCorkle, supra, that, "As to the government there is no Statute of Limitations, and in the Gibson case it is held that the statute leaves the right of entry upon the legal title, subsequently acquired by the patent, wholly unaffected by adverse possession; that such possession, either by the plaintiffs or defendants, will not control the legal title.  This being so we do not see how the statute can operate as a transfer of the equitable right" (l. c. 142).  This language is peculiarly applicable to this case, in which the cause of action is dependent upon the issuance of the patent.

IV.  Defendant Hill, proceeding upon the assumption that this is a suit to enforce the specific performance of a contract between himself and Leander J. Marshall, made in 1874, and for the reformation of the several deeds, as well as of the patent, that grew out of it, now urges that the delay of the plaintiffs in seeking a declaration of the trust resulting from the patent of 1898, is to be measured by these earlier transactions and constitutes such laches as to preclude the relief they now seek.  In this case they ignore the position of plaintiffs that their equities arise from the transfer to Leander J. Marshall, by the warranty deed of 1874, of the equities arising out of the original entry and erroneous patent.  That patent needs no reformation, because it had borne its fruit—the legal title. The deed needs no reformation because it has borne *its fruit,* the trust they are now seeking to enforce.  If laches is to be imputed it could find in this case no firmer foundation upon which to rest than his own failure, during the twenty years that succeeded the placing of the Marshall deed upon the records, to take notice of its existence.  Even when, on February 25, 1895, the General Land Office distinctly called upon

him for the abstract of title of the tract described in the first patent, he sent instead an abstract of the title to the land in controversy, which did not, of course, show that deed. So far as the record shows, he succeeded in keeping from the land department the fact of its execution until January 29, 1896, when one John P. Clark disclosed it. Mr. Hill then stepped from cover, and on April 29, 1896, filed a paper in which he claimed that "it was obtained covertly and by fraud." The department then ordered Mr. Marshall to be notified, and from that time on Mr. Hill fought openly for his patent, contending that the equities between himself and Marshall were for the courts to determine, and the commissioner finally agreed with him as we do now, and issued the patent upon that theory, stating the consideration on its face. He also found that "so long as the title to the S. E. ¼, S. E. ¼ remains in the government, neither the Marshalls nor Hill can enforce whatever right they may have."

Our Code of Civil Procedure permits but one form of action for the enforcement or protection of private rights and the redress and prevention of private wrongs, and our Statute of Limitations applies alike to all, whether they were before the enactment of the code called legal or equitable. These statutes establish the only limitation, founded upon time alone, of the right to bring an action of either variety. In the words of Judge NORTONI in Blackford v. Construction Co., 132 Mo. App. 157, 164, "It is certain that mere lapse of time alone is entirely without influence in those cases where the Statute of Limitations does not obtain." It is, however, an element and an important one in the defense of laches which still remains, a creation of equity designed to meet those cases in which the duty to move promptly in the assertion of a right arises out of the corresponding right of the adverse party to be protected from some injury that would result from delay. These respective rights,

growing out of the adverse interests of the parties, are often carefully weighed, and the administration of the doctrine of laches thus often becomes one of the most difficult and delicate branches of equity jurisprudence. All definitions of the doctrine adopted to our system of practice, contain, in some form, statements of this general idea. In Spurlock v. Sproule, 72 Mo. 503, 511, this court said: "In cases where the relief asked may or may not be granted in the discretion of the chancellor, and where a remedy exists at law, the aid of the court may be refused and the party remitted to his action at law on the sole ground of laches. But in cases where the party comes before the court with a clear right entitling him to the relief, there being no remedy at law, something more than mere delay must be shown before the relief asked can be refused, such as that the party has slept upon his rights till the property sought to be regained has been enhanced in value by improvements made, or that some other matter has intervened which would give to the party who had thus lain idle an unconscientious advantage over the other party if the relief asked were granted him."

There is nothing in this that tends to support the claim that the increase in value of real property which arises from the development of its surroundings, the discovery of natural resources, or from any other cause unconnected with the labor or expenditure of others, is not, in equity as well as at law, the legitimate property of the true owner. He may let it lie idle if he so chooses without subjecting it to appropriation by a wrongdoer. He is only required to act when he sees another expending his own labor or means in the enhancement of its value, under such circumstances that it would be inequitable that he should remain silent and claim the result. The other party may, however, and sometimes does, stand solely upon the strength of his own claim. Asking no terms, and

showing no disposition to grant any, he throws down his gauntlet and proposes to move to victory in his own way. "In such case no consideration of good faith requires that the plaintiff should open the legal warfare at the very earliest opportunity. When a hostile attitude is thus taken, the challenged party may justly be expected, and reasonably be allowed, to be wary and deliberate in choosing his time and opportunity for attack. The law does not demand the utmost exertion of diligence in repelling a hostile invasion of one's rights deliberately undertaken with full knowledge of all the facts." [Potter v. Schaffer, 209 Mo. 586, 589, quoting from 18 Am. & Eng. Ency. Law (2 Ed.), 105.]

All the parties to this transaction are, and have been, during the entire period of the growth of the controversy, nonresidents of this State. For seventeen years from the time of Hill's entry they all seemed oblivious to the fact that they had any interest in the locality in question until lead was discovered in the Flat River district. Then Mr. Hill sat up and took notice.

In 1872 Mr. Hill was acquainted with Mr. Austin Marshall, a brother of Leander J. Marshall and son of Sarah S. Marshall, through whom these plaintiffs claim, and he says that Austin Marshall was with him at the Ironton Land Office when he made this entry No. 43,783. He died June 10, 1874, and on the 19th of the same month the warranty deed was made by Hill and wife to Leander J. Marshall, who conveyed it in the following year to Mrs. Marshall. In the absence of anything in the nature of a full and frank statement explaining these transactions otherwise, it is but fair to assume that they honestly and fairly attempted to consummate the intention of the parties by putting the legal title in the person for whom the entry was made. Had the land been properly described in the first patent, the legal title would have been vested in

Mrs. Marshall. That mistake having been made, the equitable title resulting from the entry was vested in her, and attached itself to the legal title when; by the correction of the mistake, it emanated from the government.

Mr. Hill seems to have moved promptly following the discovery of lead. On December 20, 1889, he paid $38.87, taxes for the sixteen preceding years. He continued afterwards to pay them, much more than reimbursing himself by wood sold from the land. It is fair to assume that on June 23, 1890, he had forgotten to which Marshall he conveyed the land in 1874, and sent his lawyer for a quitclaim deed to Charles R., who had never, up to that time, had any connection with the title. In 1894 he began proceedings to procure a correct patent. When this could no longer be concealed from the Marshalls he inaugurated the open fight by charging that their deed had been obtained from him by fraud. Having obtained the patent he challenged these plaintiffs to a legal contest to try the title and having obtained judgment he was able to negotiate the option under which the Lead Company claims. We have gone so fully into these facts merely for the suggestion they contain that from the time Mr. Hill became aware of the desirable quality of these lands he assumed a hostile attitude toward those who claim under his deed of 1874, and when he had strengthened his position challenged them to the contest they are now maintaining against him. We fail to see in his conduct any evidence of confidence in or dependence upon them that would make it inequitable for them to choose their own time and opportunity to assert their rights. For having done this they cannot now be charged with laches.

V. We do not impute to Mr. Hill any willful misstatement, in holding that the evidence of fraud or mistake in the procurement of the deed from himself

to Leander J. Marshall is not of that clear and cogent character which would justify us in setting it aside or in holding that it is not the deliberate, fair and intelligent act of the parties to it. We have arrived at the same result with reference to the deed from Charles R. Marshall to Mr. Hill dated June 23, 1890. Although we have no doubt of the truth of the statement that he has been an invalid for twenty-eight years, and has been physically and mentally unfit during that time to transact any business as "an occupation" as he states in his testimony, the reading of that testimony has given us a high opinion of his mental accuracy and we do not think the record discloses any reason why he should not be responsible for what seems to have been his deliberate act. Even were his testimony admissible under the circumstances, and that is a question we find it unnecessary to decide, we do not think he should be permitted upon that testimony alone to overthrow his own solemn deed upon a statement showing nothing more than carelessness in making it. He does not claim that it was made as an accommodation, but acknowledges that he received a cash consideration. We are therefore of the opinion that this deed should stand as a release of the interest that was then vested in him as one of the heirs of Sarah S. Marshall.

VI. The statute under which this review is had provides (R. S. 1899, Sec. 779) that "if such petition for review be not filed within three years after such final judgment is rendered, the same shall stand absolute," and (Id., Sec. 784) that "no sale or conveyance of property for the satisfaction of any judgment, regularly made, shall be affected or prejudiced by the setting aside of any judgment on the appearance of a defendant, as hereinbefore provided, if the property shall be in the hands of innocent purchasers." In this case Mr. Hill is seized of the legal title to the lands

involved in the proceeding, and his conveyance to an innocent purchaser, for value paid, would carry the title discharged of the trust these plaintiffs are trying to enforce. The judgment of Mr. Hill in his proceeding to quiet the title works no change in this situation. The provisions of section 784 quoted above, evidently intended to give stability to sales made in the execution of legal process, and thereby prevent the sacrifice of the property of litigants, are not appropriate to this proceeding, which leaves the property intact, merely declaring the ownership provisionally, by a judgment admitting further judicial inquiry before it becomes absolute.

The Lead Company had constructive notice of all matters of public record in its own chain of title, including such collateral matters as these records pointed out. In this case the chain of title consists solely of the patent of 1898 and their own option. It is true the patent points out that it is made "in lieu of one dated August 30, 1872, in which the description of the land was erroneous, the record of which has been cancelled." This notation does not tend to direct attention to the fact that any chain adverse to the patentee existed. Nor do we think that a purchaser from the patentee or those claiming under him, who has had no connection with the proceedings by which the patent was obtained, is, by his purchase alone chargeable with notice of such proceedings.

One may, however, have actual notice of an equitable claim affecting the legal title he is about to purchase, and in such case he completes the transaction at his own risk. He has actual notice when he knows of the existence of the adverse claim of title, or is conscious of having the means of knowledge, though he may not use them. [Sensenderfer v. Kemp, 83 Mo. 581, 588, 589.] In this case the vendor of the Lead Company stated in his petition to quiet his title that he was informed and believed that the Marshalls claimed

to have and own an interest in the lands.   This information should have attracted the attention of a prudent person, and it would have been the most natural thing in the world to have inquired of Hill what it meant, an obvious means of knowledge of which the Lead Company was conscious.  Instead of doing this it took the precaution to. make the payment of the purchase price under its option depend upon a perfect title.   Whatever may be said of the question of notice at the time of its purchase, the fact that the purchase money was unpaid at the time formal notice of their claim was given it by the Marshalls, is conclusive against its character as a purchaser in good faith for a valuable consideration without notice. [Arnholt v. Hartwig, 73 Mo. 485.] It has, however, done valuable work upon the land in the way of prospecting for minerals, having drilled between nine thousand and ten thousand feet for that purpose.  It pleads, also, that it elected. within the time provided in its contract for that purpose, to exercise its option to purchase the land by paying five thousand dollars in cash, and the balance in two equal payments in one and two years, evidenced and secured as provided in the contract.

Under the circumstances we do not think it will be inequitable to permit the Lead Company to settle with the true owners of the land upon the terms of their contract with Hill.   It will only be applying the same equitable principle, to a less marked extent, that was applied by us in Bucher v. Hohl, 199 Mo. 320. The judgment of the circuit court for St. Francois county is reversed and the cause remanded to that court with directions to enter its judgment in accordance with the principles herein stated, so that the legal title to the land in controversy will be vested in the parties hereto as tenants in common in the following proportions, that is to say: to plaintiff Winifred Marshall Dittmar two-fifths; plaintiff Mrs. W. S. Marshall one-

.fifth; plaintiff Adella M. Lasley one-fifth; defendant Norman N. Hill, Jr., one-sixth, and to defendant Charles R. Marshall one-thirtieth, subject however to the right of the defendant Doe Run Lead Company, at any time within thirty days from the date of said decree, to purchase said land for the sum, and upon the terms, stated in the contract or option executed by defendant Hill and wife February 21, 1906, by depositing the cash and securities representing the purchase price provided in said contract with the clerk of said circuit court to be delivered to the parties to whom said title is so adjudged, and upon such payment and deposit, within the time specified, the legal title shall pass to and vest in said Doe Run Lead Company. The costs of this suit to be adjudged against the defendants Hill and Doe Run Lead Company. *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur, *Woodson, J.,* in separate opinion.

### CONCURRING OPINION.

WOODSON, J.—I concur fully to everything contained in this opinion, except what is said in regard to the right of the Doe Run Lead Company to purchase the land in controversy from the appellants for the sum and upon the conditions stated in the optional contract to purchase the same by it from respondent without the appellants' wish voluntarily to so do, and as to that I dissent.

PER CURIAM.—Since the transfer of this cause to the Court in Banc, and after submission, the parties, both appellants and respondents, have filed a stipulation as follows:

"It is stipulated and agreed between counsel for appellants and counsel for respondents that whereas

all of the interest of the parties plaintiff and Charles R. Marshall defendant, have, prior to the decree in Division No. 1 of this court, been transferred by deed to Winifred Marshall Jackson (formerly Winifred Marshall Dittmar, she having married Jackson since the trial below), the decree may be amended so as vest the interest to the land in controversy herein in Winifred Marshall Jackson, five-sixths, and Norman N. Hill, Jr., one-sixth, and that all of said interests shall vest in the Doe Run Lead Company upon the payment by said Doe Run Lead Company of fifteen thousand dollars, twenty-five hundred dollars of which to be paid to Norman N. Hill, Jr., and twelve thousand five hundred dollars to Winifred Marshall Jackson, or to their respective attorneys of record; and, whereas, the Doe Run Lead Company has already deposited with the clerk of the circuit court of St. Francois county the sum of fifteen thousand dollars in cash, it is stipulated and agreed between counsel that a decree may be entered for the payment of the same to the attorneys of record for Winifred Marshall Jackson and Norman N. Hill, Jr., respectively, in above proportions, and that all the title and interest of the parties to this suit in the land in controversy shall, upon said payment, be vested in the Doe Run Lead Company. The costs of the suit to be adjudged against the Doe Run Lead Company.''

Whereupon it is ordered and adjudged by the court, sitting in Banc as aforesaid, that the decree heretofore made and entered in Division Number One be so changed and modified that the said cause be, and it is, remanded to the circuit court for St. Francois county with directions to enter a final decree therein in all respects in accordance with the terms of said stipulation, and that the mandate of this court in accordance herewith issue immediately.

The opinion of BROWN, C., in Division One is adopted as the opinion of the Court in Banc with the modification suggested by WOODSON, J., in a concurring opinion filed, but our direction as to the entry of the decree in the circuit court is founded upon the stipulation.